BAILEY, &c.,

v.

PIZZINI & ALS.

(*Supreme Court of Appeals of Virginia, May, 1883.*)

[Virginia Law Journal, 1883, p. 429.]

### Post-Nuptial Settlement—Powers of Wife over Estate.

A post-nuptial settlement by which the wife can only dispose of the rents and profits, or, with the trustee, can alienate only for the purpose of reinvestment, and they cannot charge the corpus of the estate for debts.

### Sale of Negotiable Notes—Usury.*

Where the maker of a negotiable note payable to his own order endorses the same, and it is sold by a broker to a purchaser who knows the money raised is for the maker and endorser, if it is purchased at a discount greater than the rate allowed by law, the transaction is usurious.

Appeal from a decree of the chancery court of the city of Richmond, in two suits which were heard together under the short styles of "Bailey, for, etc., v. Hill & als.," and "Bailey, Jr., v. Pizzini & als." The only facts which are necessary to be stated for a proper understanding of the points decided are these : Mary C. Bailey, the wife of A. M. Bailey, held through her husband, as trustee, a house in which they lived in Richmond, which she inherited from her brother, and the terms of the trust were "that the trustee

---

*See foot-note to Gimmi *v.* Cullen, 20 Gratt. 439 (Va. Rep. Anno.); monographic note on "Bills, Notes and Checks," Va. Rep. Anno.

should hold and manage the property and all and every parcel thereof to and for the sole and separate use, benefit, and disposal of the said Mary C. Bailey, free from the debts, control, and marital rights whatsoever of her said husband, and that he, the said trustee, should and would pay, transfer and deliver unto the said Mary C. Bailey, or unto such person or persons, and at such time or times, and in such proportions, manner and form as she, the said Mary C., may request by her order in writing, attested by two or more credible witnesses, all the rents, issues and profits of the said property so conveyed as aforesaid; and all the said estate and property conveyed and the produce and increase thereof should be had, taken, held and enjoyed by such person or persons, and for such use as the said Mary C. Bailey shall at any time hereafter during her life limit, desire, order or dispose of the same or any part thereof, either by her last will and testament in writing, or by any other writing whatsoever signed by her hand in the presence of two or more witnesses.    And upon the further trust, that the trustee, whenever he might thereunto be required by the said Mary C., in writing, signed by her in the presence of two or more credible witnesses, will convert the property thereby conveyed in whole or in part into money, and invest the same in real estate or other property in the city of Richmond or elsewhere  *  *  * and on the further trust that if the said Mary C. shall during her life fail to limit, devise, order or dispose of the property hereby conveyed in the manner hereinbefore mentioned, then that the trustee will hold the property conveyed for the use and benefit of the children of said Mary C., who may survive her, share and share alike, and will deliver the possession of the same to them at the death of said Mary C., or as soon thereafter as practicable; provided, that such delivery should not be made by him until they and each of them should attain the age of twenty-one years.''

A. M. Bailey, the husband and trustee, made and endorsed two notes, one for $500 and the other for $3,850, both payable at twelve months, and at the request of his wife, in writing, signed in the presence of two witnesses, executed deeds of trust on the said house and lot held by him as trustee, to secure the said notes, and they were then sold by the brokers to third persons for valuable considerations, but at a rate of discount greater than the legal rate. The notes not having been paid at maturity, the property was sold to satisfy the debts, and L. W. Pizzini became the purchaser. This suit was brought by Mrs. Mary C. Bailey to annul the deed. The cause having been referred to a commissioner, who reported that the deeds were valid, and that the debts secured by them should be paid, the report of the commissioner was excepted to on the three grounds stated in the opinion of the court. All three of these exceptions were overruled by the chancery court, and from that decree Mrs. Bailey appealed.

It is needless to set out the facts as to the mental capacity of the trustee at the time of the transaction. About twenty witnesses were examined and many opinions expressed. The commissioner and chancellor thought he was capable of doing the acts he performed as trustee, and the chancellor thought Mrs. Bailey, by signing the written request asking the trustee to do what he did, was estopped to deny his capacity to do as she had by the writing requested him. The court of appeals thought the trustee was mentally incapable of doing any act which would bind his *cestui que trust.*

*Jos. Christian* and *Sands, Leake & Carter,* for the appellants.

*A. M. Keiley,* for the appellees.

LACY, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of the city of Richmond, entered on the 4th day of November, 1880, in the above-named suits.   Under the post-nuptial settlement of January 31st, 1866, the real estate is to be held by the wife during her life under its provisions, the trustee to reinvest if the same shall be sold.   The trustee, pending the transactions, the subject of litigation here, was the husband of the appellant, Mary C. Bailey.   The wife and the trustee made a trust deed conveying the property to secure a debt of $3,800, and these suits are brought by Mrs. Bailey and her children, respectively, to prevent the sale of the said property under the deed.

The chancery court dissolved the injunction by decree of that date on the 4th of November, 1880, and appointed commissioners to make sale of the said lands unless the debt was paid in sixty days.   From this decree Mrs. Bailey appealed to this court.

The cause came up in the said chancery court on exceptions to the commissioner's report, among which were :

1st. That the commissioner had reported that the trustee and husband of this married woman was competent to contract in the time of the execution of the trust deed in question, dated April 18th, 1877.

2d. That the commissioner had reported the trust deed binding on Mrs. Bailey and her children.

3d. That the commissioner reported that the debt was not usurious.

This is a case upon the facts of peculiar and severe hardship.   The evidence shows that the trustee and husband was an imbecile, if not an actual lunatic.   Under the guise of selling notes, the money was borrowed by him at a rate of interest in excess of the rate allowed by law, and the whole was finally secured by a trust deed, which was made to con-

form as near as possible to the terms of alienation prescribed
in the deed of settlement.   It is a fundamental rule that to
make a deed valid the parties must be competent to contract.
The trustee and husband in this case was incompetent, and
for that reason the deed is not valid and binding on any of
the beneficiaries in the deed of settlement of January 31st,
1866, and the chancery court erred in overruling this excep-
tion.

The second exception as to right of alienation and the deed
of settlement aforesaid should have been sustained.   This
case upon that point is controlled by the case of the Bank of
Greensboro v. Chambers, in 30th Gratt.   We may say here,
as in that case, that it is conceded that this is a separate
estate, belonging to Mrs. Bailey under the deed of settlement.
A married woman is the owner of her separate estate and of
the right of disposal of the same, subject to such limitations
as are contained in the instrument.   "In the construction of
every instrument, the paramount rule is to construe it so as
if possible to give effect to every part of it, and in order to
discover the intention of the parties we look not only to the
terms of the instrument, but to the subject-matter and the
surrounding circumstances."

Looking to the deed of settlement we see that the leading
intent was to provide and to secure a home, maintenance and
support, not for the wife only, but for the children.   It was
the clear and plain intention of this settlement to provide
for the wife, to give her the use of the profits, and the right
to alienate is limited by the command therein to reinvest the
proceeds.   Under the transactions in this case the wife has
been induced to enter into a deed which results in the abso-
lute alienation of the trust subject.   We are of opinion that
under the terms of the deed of settlement of January 31st,
1866, the wife could use and dispose of only the annual
rents, issues and profits, and by and with the consent and

concurrence of the trustee in due form to alienate in order to reinvest the proceeds of the corpus. These speculative and indeed questionable transactions result in a complete alienation of the corpus of the trust subject and that too without the concurrence of the trustee, because an insane trustee cannot contract, cannot consent, can do no valid or binding act either alone or in conjunction with any other person, and the supposed trust deed of April 18th, 1877, is invalid and not binding, and the court should have sustained the second exception upon that ground and held the deed invalid. These two exceptions having been sustained the third ceases to be of any great importance, but that also should have been sustained. The transactions were plainly usurious; the usury is transparent throughout. The case of Whitworth v. Adams, 5 Rand. 333, and subsequent cases affirming the same, including Gimmi v. Cullen, 20 Gratt. 439, proceed upon the principle that the purchaser did not know that the note was sold for the benefit of the maker, and he was protected as an innocent purchaser. These cases have no application to a case like this; the maker of the note was the endorser, and borrowed money on the note at usurious rates of interest, and the usury is stamped on the whole transaction. The proceedings and the very proofs in the case treat and describe the transaction as a loan to the trustee, and all the persons dealing with this note appear to be, and doubtless were, entirely familiar with all the attendant circumstances; the usury was not only transparent and exhorbitant, but the whole transaction seems to be unconscionable and not such as a court of equity should enforce.

The court below erred in overruling these exceptions to the commissioner's report, and the decree of the said chancery court must be reversed and annulled.

The said court should have sustained the said exceptions and entered an order perpetuating the injunction against the

defendants, Hill and Pizzini, setting aside as invalid the deed of April 18th, 1877.

Hinton, J., thought the *cestui que trust* should be charged with such part of the fund as was expended for her support and maintenance.

Reversed.