Statement.

## Richmond

### MORRIS v. BERNARD & OTHERS.

#### March 13, 1913.

1. . DEEDS—*Rules of Construction—Case in Judgment—"Heirs of Her Body"—Children.*—In construing a deed all parts of the deed must be considered and that construction adopted which will carry out the expressed intent of the parties, and, if possible, effect should be given to every word used in the instrument. Technical words are presumed to have been used technically unless the instrument, read as a whole, clearly shows a different intent. Applying these and other rules of construction given in the opinion of the court to the deed under construction, it is manifest that the words "heirs of her body" annexed to a gift were used as the equivalent of and to designate the same class of persons as the word "children," and hence the grantee took only a life estate.

2. DEEDS—*Rules of Construction—Expressed Intent.*—All rules of construction have but one view, and that is to ascertain the intent of the parties as expressed in the instrument to be construed, and that intent, when ascertained, if it controverts no rule of law or of public policy, becomes the law of the case, and full effect must be given to it.

3. DEEDS — *Construction — General Intent — Subordinate Purpose.* — Where there is a manifest general intent, the construction of the instrument should be such as to effectuate it, though thereby some particular or subordinate intent may be defeated, or the literal import of the words be departed from.

Appeal from a decree of the Circuit Court of Campbell county. Decree for the complainant. One of the defendants appeals.

*Affirmed.*

The opinion states the case.

*Scott & Buchanan,* and *Light & Russell,* for the appellant.

*Frank Nelson* and *S. V. Kemp,* for the appellees.

Keith, P., delivered the opinion of the court.

By deed dated April 13, 1855, of record in the clerk's office of the County Court of Campbell county, Edwin R. Page conveyed to John D. Alexander, trustee, a tract of land in said county, containing about ten acres, for the use and benefit of Barnet and Ann B. Finch during their lives and the life of the survivor of either of them, "and after the death of both, the said Barnet and Ann B. Finch, then for the sole separate and exclusive use and benefit of the said Panthea S. V. Finch and the heirs of her body free from the control of her husband when married, and if the said Panthea S. V. Finch should die without lawful issue surviving her, then for the use and benefit, the one moiety thereof, of the said Frances H. Ellington and her children for their separate use and maintenance free from the control of the husband of the said Frances H. Ellington; and the other moiety thereof, for the use and benefit of the said Geo. E. Finch, and if the said Panthea S. V. Finch and Frances H. Ellington should both die without lawful issue surviving them, then the whole of it for the use and benefit of the said Geo. E. Finch and after the death of the said Barnet and Ann B. Finch and Panthea S. V. Finch, the said Alexander shall convey the said property in fee simple to the children or their descendants of the said Panthea S. V. Finch, if any there be, and if by reason of the death of the said Panthea S. V. Finch without issue the said Frances H. Ellington and her children and the said Geo. E. Finch, should become entitled to the use of the said property, then after the death of the said Frances H. Ellington, the said Alexander shall convey the same in fee, the one moiety to the children or their descendants, of the said Frances H. Ellington, and the other moiety to the

said Geo. E. Finch, subject to the life interest of the said Barnet and Ann B. Finch, and whenever by reason of the death of all the others, *cestuis que trust* herein mentioned, the said Geo. E. Finch shall become entitled to the use of the whole of the aforesaid property, the said Alexander shall convey the same to the said Geo. E. Finch in fee simple, and it shall further be the duty of said John D. Alexander, whenever he shall be thereto required by the said Ann B. Finch, to sell the aforesaid property and convey the same to the purchaser and to invest the proceeds of such sale, either in other real estate or stock, or personal property, subject to trusts and limitations of this deed, or otherwise as the said Ann B. Finch may direct."

Barnet and Ann B. Finch died many years ago, leaving surviving them Panthea S. V. Finch, who married one Bernard and died in the year 1910, leaving surviving her two children, B. F. and Queen Bernard. Shortly before her death, by deed dated November 11, 1895, Panthea S. V. Finch, then Mrs. Bernard, conveyed the land in controversy to M. C. Morris, for the benefit of his wife, Mary, and her children, during her life, and at her death the same to vest in fee simple in the children born and to be born of the said M. C. and Mary E. Morris. The said M. C. and Mary E. Morris both died, leaving Grace D. Morris as their sole surviving child.

B. F. Bernard, the son of Panthea S. V. Finch, and Anne Myrtle Bernard, his wife, filed their bill in the Circuit Court of Campbell county, asking partition of the land mentioned in the deed from Page, trustee, to John B. Alexander, trustee, making Queen Bernard, a person of unsound mind who was a sister of B. F. Bernard, Mrs. M. E. Bernard, a widow, John Morris and Grace D. Morris, parties defendant, and the prayer of the bill was that partition be had of the house and lot of land, and to that end that the same be sold under order of the court and the proceeds dis-

tributed to the parties in interest; and that the deeds of trust be construed and the title to the land cleared before a sale.

Queen Bernard and Grace D. Bernard answered by their guardian *ad litem,* and the cause coming on to be heard upon the bill, the answers and the exhibits, the court was of opinion that Panthea S. V. Finch, afterwards Panthea S. V. Bernard, took only a life estate under the deed of April 13, 1855, and that her deed of the 11th day of November, 1895, to M. C. Morris, trustee, conveyed only her life interest in said property, and that she being now dead the defendants, John Morris and Grace D. Morris, who claim under that deed, have no interest in the fund arising in this cause.

A petition to rehear this decree was presented, but the court being of opinion that there was no error in the decree, rejected the said petition and thereupon the infant defendant, Grace D. Morris, by her next friend, applied for and obtained an appeal.

The sole question to be considered is what estate did Panthea S. V. Finch take under the deed of April 13, 1855? Appellant contends that she took an estate in fee simple, and if that be so, the decree of the circuit court must be reversed. On behalf of the appellees the contention is that she took only a life estate, and if that view be correct, the decree of the circuit court must be affirmed.

In the petition for an appeal, appellant sets forth certain rules of construction in respect to deeds, about which there can be no controversy:

"(1) That all parts of the deed must be considered and that construction adopted which will carry out the intent of the parties, which intent must be gathered from the language used; that the true inquiry is not what the grantor meant to express, but what the words used do express."

"(2) That where words are used which have a well de-

fined technical meaning, they should be given their technical meaning. And this is especially true when it can be seen, as in the case at bar, that the deed was drawn by a professional hand."

"(3) That it is the duty of the court to give the proper meaning to every word used in the instrument if possible."

"(4) That if it appears that two provisions of a deed are in irreconcilable conflict, the last provision yields to the first and the first must be given its full effect."

"(5) And when a provision is made in a deed in clear, explicit and unambiguous words, it cannot be revoked by implication by a later clause in the deed, but if revoked at all, must be by terms as clear, decisive and explicit as the terms by which the first estate was given."

These propositions are supported by a numerous array of authorities; but as they are nowhere controverted, those authorities need not be discussed. It is proper to observe, however, that all rules of construction have but one object, and that is to ascertain the intent of the parties to the instrument to be construed, and that intent when ascertained, if it controverts no rule of law or of public policy, becomes the law of the case, and full effect must be given to it.

The question involved in this appeal turns solely upon the proper construction of the deed of April 13, 1855, unaided by extrinsic evidence, and the court is to determine from the language used what estate Panthea S. V. Finch took under that deed. Did she take a life estate and no more, with vested remainder to her children, or did she take a fee tail, converted by the statute into a fee simple, defeasible only upon her dying without issue, as petitioner contends is the right construction?

By the terms of the deed Alexander, the grantee, is to hold the property in trust for the use and benefit of Barnet and Ann B. Finch during their natural lives, and the life

of the survivor of them, and after the death of both the said Barnet and Ann B. Finch, then for the sole separate and exclusive use and benefit of the said Panthea S. V. Finch and the heirs of her body. Had the deed stopped there, there would have been no room for doubt. Panthea S. V. Finch would have taken a fee tail, converted by the statute into a fee simple, defeasible only upon her dying without issue. But the deed does not stop there, and as we are to give effect, if possible, to all the language used, we must endeavor to ascertain what was in the mind of the parties when they framed the subsequent provisions of this deed.

It is provided that if Panthea should die without lawful issue surviving her, then the property is to be held by the trustee for the use and benefit of Frances H. Ellington, as to one moiety thereof, and her children, and as to the other moiety, for the use and benefit of George E. Finch; "and if the said Panthea S. V. Finch and Frances H. Ellington should both die without lawful issue surviving them, then the whole of it for the use and benefit of the said Geo. E. Finch." Had the deed stopped there, it might plausibly have been contended that its provisions were in conflict, and that the first must be given its full effect, and that Panthea S. V. Finch took a fee simple estate; or that the provision having been made in clear and explicit terms, giving to Panthea a fee tail converted by statute into a fee simple, it could only be revoked by terms as clear and explicit as those by which the first estate was given, and that the language of the deed immediately following the grant to Panthea and the heirs of her body does not measure up to that requirement. It cannot be denied, however, that the effect of the language quoted is to throw doubt upon whether or not the term "heirs of her body" was intended to be used in a technical sense as importing indefinite succession. The subsequent provision which we have quoted

tends to prepare the mind to accept, if it does not compel, the conclusion that it was not the purpose of this deed to vest an absolute fee simple in Panthea S. V. Finch.

But the deed does not stop there. It is then provided that "after the death of the said Barnet and Ann B. Finch and Panthea S. V. Finch, the said Alexander shall convey the said property in fee simple to the children or their descendants of the said Panthea S. V. Finch, if any there be, and if by reason of the death of the said Panthea S. V. Finch without issue the said Frances H. Ellington and her children, and the said Geo. E. Finch, should become entitled to the use of the said property, then after the death of the said Frances H. Ellington, the said Alexander shall convey the same in fee, the one moiety to the children or their descendants of the said Frances H. Ellington, and the other moiety to the said George E. Finch, subject only to the life interest of the said Barnet and Ann B. Finch."

No sensible interpretation can be given to the language just quoted which is consistent with the use of the term "heirs of her body" in its technical sense, and it is made plain to demonstration that the term was used as the equivalent of and to designate the same class of persons as the word "children."

As was said in *Hurt* v. *Brooks,* 89 Va. 496, 16 S. E. 358, "Where there is a manifest general intent, the construction should be such as to effectuate it, though thereby some particular or subordinate intent may be defeated, or the literal import of the words be departed from." In obedience to that rule, it was held that where the testator, after giving certain property to his son A, then added: "This property, thus specified by me, and given to my son A during his natural life, at his death I give and bequeath the same to his children, lawfully begotten heirs of his body, and their descendants, if he should have any to die leaving children, during his natural life," "the general intent of the will was

to make the shares of testator's children equal, and to limit the property devised and bequeathed to A and to the other children to the natural life of each. In the will there were particular words which might raise a presumption of a fee simple estate in A. Held: Those particular words were controlled by the general intention that A should take an estate for life only, with remainder to his children."

In *Nye* v. *Lovitt*, 92 Va. 710, 24 S. E. 345, it is said: "Technical words are presumed to have been used technically, unless the contrary appears on the face of the instrument; and words of definite legal signification are to be understood as used in their definite legal sense." In that case the court was of opinion that the words were used in their legal sense, and that there was nothing to the contrary appearing upon the face of the instrument.

In *Wallace* v. *Minor*, 86 Va. 550, 10 S. E. 423, it was held that "The word 'heir' has a well-known technical meaning. Technical words are *prima facie* to be taken in their legal sense, unless from the contents of the will it plainly appears that testator intended to use them in a different sense." In the course of the opinion the court said: "The word in question (heirs) has a well-known technical meaning, and we think technical words are *prima facie* to be understood in their legal sense, unless, from the contents of the will, it plainly appear that the testator intended to use them in a different sense; and when the testator uses only technical phrases the court is bound to understand them as such, because the court cannot say that he did not know their meaning. But if the testator uses other expressions, in other parts of his will, which shows he did not mean to use those phrases technically, then the intention must prevail. It is in conformity with these principles that if the testator uses legal or technical phrases only, his intentions should be construed by legal rules; and,

if he uses common words, his intentions should be regulated according to the common understanding thereof." See *Temple* v. *Wright*, 94 Va. 339, 26 S. E. 844.

Upon the whole case we are of opinion that there is no error in the decree complained of, which is affirmed.

*Affirmed.*