# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MASON MATHEWS, G. T. THAYER AND J. A. HOLLEY, TRUSTEES, v. J. P. GILLESPIE.

### November 15, 1923.

1. DEEDS—*Construction—Boundaries—Construction Against Conveyance of Land not Owned by Grantor—Case at Bar.*—Owners of land generally know their own boundaries, and their deeds should not be construed as intending to convey land to which they have no title, unless the language used therein is so clear as to leave no fair doubt of such an intention. In the instant case it was apparent that, so far from intending to convey land outside of his own tract, it was evident that the grantor only meant to convey a part of that tract and expressed that intention.

2. BOUNDARIES—*Construction of Deed—Continuous Straight Line.*—Where both ends of a line are fixed, without more, the conclusion that such a line proceeds in a direct course is universal, unless some boundary is given which indicates that it goes by a line which is not straight. Whether straight or not, where both ends are given it is continuous.

3. DEEDS—*Construction—Description of Land—Boundaries—Repugnant Description.*—Where several particulars are given in the description, all of which are necessary to identify the land intended to be conveyed, nothing but what will correspond with all the particulars will pass by the deed; but where the deed contains two descriptions of the land equally explicit, but repugnant to each other, that description which the whole deed shows best expresses the intention of the parties must prevail. The court will look into the surrounding facts, and will adopt that description, if certain and definite, which, in the light of the circumstances under which it was made, will most effectually carry out the intention of the parties.

4. DEEDS—*Construction—False Description.*—A false description does not render a deed or other writing inoperative, if, after rejecting so much of the description as is false, there remains a sufficient description to ascertain with legal certainty the subject matter to which the instrument applies.

   DEEDS—*Boundaries—Reference to Maps and Surveys.*—Where a map or survey is referred to in a deed for the purpose of fixing the boundary

of the land conveyed, the effect is the same as if it were copied at
large in the deed.

6. Deeds—*Irreconcilable Boundaries—Case at Bar.*—In the instant case
it was impossible to follow the boundaries given in the deed literally
as they were in irreconcilable conflict. One of the calls was:
"Thence running with the creek until it intersects G. Kyle's line,
thence with that line up the mill ridge to the corner of the above
survey, thence along the upper line of the fifty-eight acre tract to the
said McCaleb's corner, supposed to be on that line." The G. Kyle
line was not a straight line and if followed would have resulted in
attempting to convey land not owned by the grantor.

*Held:* From this and other considerations, that instead of emphasizing
the effect of the call for the G. Kyle line, a line single and straight
between the termini which followed G. Kyle's line a part of the way
would be adopted.

Error to a judgment of the Circuit Court of Alleghany
county in a proceeding to establish boundaries of land.
Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*J. M. Perry,* for the plaintiffs in error.

*Revercomb & Revercomb* and *R. B. Stephenson,* for the
defendant in error.

Prentis, J., delivered the opinion of the court.

This case is exceptional in that the learned attorneys
have by stipulation and in argument discarded many
confusing and immaterial facts, confining themselves
and directing our attention to the single and controlling
issue which is involved. It therefore presents a pleas-
ing contrast with many other cases which reach this
court.

The ownership of ten and forty-seven hundredths
acres of land is involved, and the question is raised by

petition under Code, section 5490, for the establishment
of a line between coterminous lands.

This is the single issue which is presented: If the line
in dispute runs as the plaintiffs contend, then the tri-
angle of land ten and forty-seven hundredths acres in
area belongs to the plaintiffs; but if the disputed line
runs as the defendant contends, then this land belongs
to the defendant.    Its determination depends upon the
true construction of a single deed dated  May  1, 1867,
from Sively to the defendant, Gillespie, and upon specific
language of that deed which (omitting other undisputed
boundaries) describes certain boundaries of the land
thus: "Thence running with the creek until it intersects
G. Kyle's line, thence with that line up the mill ridge to
the corner of the above survey, thence along the upper
line of the fifty-eight acre tract to the said McCaleb's
corner, supposed to be on that line.".

While the issue is thus simplified, it is exceedingly
difficult to state comprehensively the  circumstances
which aid in determining it.

For the better understanding of the controversy,
therefore, a section of a plat filed with the petition and
used in evidence is herewith printed and referred to.

The triangle indicated by the letters D, A, B, shows
the land in controversy.    The line claimed by the plain-
tiffs is indicated by the letters W, D, B, and that
claimed by the defendant by the letters W, D, A, B.
The plaintiffs asked the trial court for an instruction,
which was refused.    It reads:

"The court instructs the jury that according to the
terms of Mr. Gillespie's deed, the boundary line here in
question must run from the intersection of the Gillespie
line with the Kyle line at the creek, which point is
marked 'W' on the plat filed with the plaintiff's petition,
to a common corner of the 259 acre Persinger survey

'and the fifty-eight acre Persinger survey,' that is, to the point marked on said plat as 'B;' from that point the deed requires the line of the smaller tract to follow the upper line of said 'fifty-eight acre survey' to the point of beginning.    The court further instructs the jury that the line shown on said plat as running from 'A' to 'B' is not called for in said Gillespie deed, and that therefore the point marked 'A' on said plat cannot be a corner of the true boundary line in question between the parties as called for by said deed; and accordingly the true boundary line between the parties is that shown on said plat to run from 'W' past 'D' to the point 'B', and the jury shall so find."

The trial court, on motion of the defendant, granted instruction 1, which reads:

"The court instructs the jury that according to the true purpose and intent of the deed from Sively to James P. Gillespie the words in that deed, 'until it intersects with G. Kyle's line, thence with that line up the Mill Ridge to the corner of the above survey,' means thence with the lines of G. Kyle's lands up the Mill Ridge to the corner of the Persinger survey at A, as shown on the plat filed with the petition in this case, and that according to this construction the true boundary line between the plaintiffs and the defendant is the line from 'W' to 'D' and thence to 'A' as shown on the map filed with the petition in this case, and the jury should so find."

In obedience to this instruction, the jury found for the defendant, the plaintiffs moved to set aside their verdict, which motion was overruled.    Exceptions were taken by the plaintiffs to each of these three adverse rulings, and each is assigned as error.

There is no substantial conflict in the testimony. These facts appear: Referring to the plat, one line of

the fifty-eight acre tract, part of which Sively conveyed to the defendant, is correctly indicated by the letters C, W, D, B, and the letter B shows the common corner between that tract and the 259 acre tract. The C. Kyle line or lines are indicated by the letters W to D along the land formerly owned by Boston Shawver, a 430 acre tract, and continues from D to A along Kyle's land which was formerly owned by John Shawver, the forty-five acre tract. The "Mill Ridge" up which the disputed line is stated by the deed to run, goes from W to D, and then according to the parol evidence that call of the deed is as well satisfied by extending it from D to A as from D to B. The location is on a mountain side.

It is observed then that it is impossible to follow the boundaries given in the deed literally, for they are in irreconcilable conflict. If the G. Kyle line is followed along both the Boston Shawver line from W to D and continued from D to A along the John Shawver line, it is impossible to run from the point thus reached "thence along the upper line of the fifty-eight acre tract to the said McCaleb's corner," as the deed requires, for there is a gap of sixty-four poles between the point A and the point B, corner of the fifty-eight acre tract. Whereas, if the line is run as claimed by the plaintiffs from W to D and thence to B, corner of the fifty-eight acre tract, it fails to follow the deed in that from D to B it does not contin- uously follow the G. Kyle line as the deed apparently re- quires. It being impossible then to follow the lines of the deed strictly, the difficult problem is to determine which of these inconsistent calls of the deed expresses its true meaning.

The learned judge of the trial court, by instruction 1, gave full effect to the call from the intersection with "G. Kyle's line, thence with that line   *   *   *" ad-

hering strictly to Kyle's line until it reached the 259
acre survey at "A," and this ignores the fact that from
the end of the line thus followed the boundaries do not
.close, because the next call is "thence along the upper
line of the fifty-eight acre tract," which is sixty-four
poles distant, and the line thus supplied constitutes one
side of the triangle of land involved.   We must deter-
mine as best we can which construction of the deed is
best supported by its language when considered in con-·
nection with all the attendant circumstances.

[1, 2] As discrediting the soundness of the view of the
trial court, we observe, in the first place, that by him the
deed of Sively to Gillespie is construed to convey the
triangle involved, when it is perfectly clear that Sively
did not own it.   By giving emphasis to the specific call
for G. Kyle's line, there is, we think, a failure to give
proper consideration to the view that owners of land
generally know their own boundaries, and that their
deeds should not be constructed as intending to convey
land to which they have no title, unless the language
used therein is so clear as to leave no fair doubt of such
an intention.   That the grantor, Sively, did not intend
by the conveyance of this tract to convey any land
which was not a part of the fifty-eight acre tract is man-
ifest from his language, that the tract conveyed con-
tained about forty acres, more or less, "being a part of
the fifty-eight acre tract."   So that, so far from any in-
tention to convey land outside of the fifty-eight acre
boundary being apparent, from the words used it is
evident that the grantor only meant to convey a part
of that tract and expressed that intention.   We note
again that the language used indicates that the line in-
volved is a single line, that its beginning is where the
creek intersects G. Kyle's line, and that it goes thence
"up the mill ridge to the corner of the above survey."

The words "above survey" in that connection refer to a part of the 259 acre tract which by the same deed was conveyed from Sively to Gillespie, by specific bounds, courses and distances, and is referred to in the deed three times as the "above survey." So that we have on this disputed line a beginning point—that is, where the creek intersects G. Kyle's line, and we have its termination, the corner of the "above survey;" and we have more, because the next course is from that termination "thence along the upper line of the fifty-eight acre tract." Where both ends of a line are fixed, without more, the conclusion that such a line proceeds in a direct course is universal, unless some boundary is given which indicates that it goes by a line which is not straight. Whether straight or not, where both ends are given it is continuous. The trial court however deemed it imperative to follow and not depart from G. Kyle's line, and instead of following one continuous line made it necessary to follow three—that is, along Boston Shawver's line from W to D, then almost at a right angle along the John Shawver forty-five acre tract line from D to A, and thence at an acute angle, supplying an additional course of sixty-four poles, which leaves the Kyle-Shawver line and to which the deed makes no reference, in order to reach the common corner between the fifty-eight acre survey and the 259 acre tract at B which the deed requires. So that a line which, upon one construction of the deed, was presumably straight, certainly continuous, and one end of which is fixed by a line of the fifty-eight acre tract, part of which was being conveyed, is held to consist of three lines, one running eastwardly from W to D, one southwardly from D to A and the other northeastwardly from A to B. Instead of emphasizing the effect of the call for G. Kyle's line in the language we are construing, which leads to the

results we have indicated, it seems to us necessary to emphasize the fact that the line in question is a single line which in the absence of qualifying words is presumed to be direct, and that it terminates at a corner which is common to the 259 acre survey ("above survey") and the fifty-eight acre tract.   When we refer to the plat we find a line single and straight, which follows G. Kyle's line a part of the way along the Boston Shawver 430 acre tract, which is identical with a perfectly well established line of the fifty-eight acre tract, a part of which was being conveyed.

These considerations lead us to a different conclusion from that expressed by the trial court in instruction 1.

[3, 4] The proper rule to be applied here is that stated by Buchanan, J., in *State Savings Bank* v. *Stewart*, 93 Va. 451, 25 S. E. 543, 544:

"Where several particulars are given in the description, all of which are necessary to identify the land intended to be conveyed, nothing but what will correspond with all the particulars will pass by the deed; but where the deed contains two descriptions of the land equally explicit, but repugnant to each other, that description which the whole deed shows best expresses the intention of the parties must prevail.   The court will look into the surrounding facts, and will adopt that description, if certain and definite, which, in the light of the circumstances under which it was made, will most effectually carry out the intention of the parties.

"It is one of the maxims of the law that a false description does not render a deed or other writing inoperative, if, after rejecting so much of the description as is false, there remains a sufficient description to ascertain with legal certainty the subject matter to which the instrument applies.   This rule of construction is said to be derived from the civil law.   *Falsa demonstratio*

*non nocet cum de corpore constat.* 2 Minor's Inst. 1063 (4th ed.); 1 Greenleaf on Ev., sec. 301; 2 Taylor on Ev., sec. 1218, etc.; *Wooten* v. *Redd*, 12 Gratt. (53 Va.) 196, 209; *Preston & Massie* v. *Heiskell,* 32 Gratt. (73 Va.) 48, 59 and 60; Broom's Legal Maxims, 629, etc. (7th ed.)''

[5] Where a map or survey is referred to in a deed for the purpose of fixing the boundary of the land conveyed, the effect is the same as if it were copied at large in the deed. *Edmunds* v. *Barrow*, 112 Va. 332, 71 S. E. 544. So that under that rule the two surveys and their lines referred to in the deed are pertinent here, and, unless the language of the deed discredits such a construction, are controlling.

[6] In 3 Washburn Real Property (6th ed.), section 2330, it is said to be a universal rule ''that where a line is given in a deed as running from one monument to another, it is always to be taken as straight unless otherwise described.'' The line here claimed by the plaintiffs is a straight line beginning at the creek and running to the corner which is common to the fifty-eight acre and the 259 acre tracts, and it is from this corner that the next line given in the deed runs.

Just how the ambiguity in the deed can be explained is not clear, but this has been suggested: That when the parties referred to G. Kyle's line they meant so much of G. Kyle's line along the Boston Shawver 430 acre tract, which Kyle at that time owned, as was also a line of the fifty-eight acre tract, and that the John Shawver forty-five acre tract which Kyle also owned was not in mind, because it did not touch the fifty-eight acre tract, part of which was being conveyed. It is also observed that in the description of one of the other tracts of land conveyed by the same deed, the John Shawver line instead

of the Kyle line, is designated, though at that date the John Shawver land belonged to Kyle.

There is some evidence which undertakes to set up adverse possession in the defendant, Gillespie, but it is insufficient.    The land is part of a precipitous mountain side or ridge, which is wild, unfenced and uncultivated, and no adverse possession thereof has been shown. The title depends upon the deeds.

Our conclusion, therefore, is that the trial court erred in giving defendant's instruction 1, which should have been refused, and that instruction "A" offered by the plaintiffs should have been granted.    It follows, therefore, that we will reverse the judgment of the trial court, and as the case has been fully developed, and the issue depends upon the construction of the Sively deed to Gillespie, we will enter here such judgment as the trial court should have entered—that is, that the true boundary line between the land of the petitioners, Mason Mathews, G. T. Thayer and J. A. Holley, trustees, and that of the defendant, J. P. Gillespie, extends from the point indicated by the letter W on the plat filed with the petition of the plaintiffs in a straight line through the points indicated by the letters D and B on said plat.

*Reversed.*