## DELBERT W. CONNER AND EMMAGINE CONNER v. WALTER HENDRIX, ET ALS.

September 10, 1952.

Record No. 3907.

Present, All the Justices.

The opinion states the case.

*John E. Mayo, R. O. Norris, Jr.* and *Butzner & Butzner,* for the plaintiffs in error.

*Goolrick & Ashby* and *W. D. Williams,* for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This proceeding, involving the ownership of a small parcel of land in the town of Colonial Beach, was originally instituted in chancery by the plaintiffs in error, Delbert W. Conner and Emmagine Conner, against Walter Hendrix and others, the parties in possession of the land. It was subsequently transferred to the law side of the court, and thereupon plaintiffs in error, by leave of court, filed a declaration in ejectment, to which defendants pleaded the general issue. The case came on to be heard, and the court deeming the evidence of plaintiffs in error insufficient to show that they had title to the land, struck the

evidence. The jury then returned a verdict for defendants, and judgment was entered accordingly.

The sole question for our decision is whether the trial court erred in striking the evidence.

For the purpose of clarity a diagram of the land involved and its surrounding area is set out below, the diagram being a reproduction of a material part of a plat made by Hunter and Brewer, dated April 30, 1884, and hereinafter referred to as the map of 1884. We have added the words "Hotel Reservation" to the original plat. They indicate the unplatted area often referred to as the "Hotel Reservation" in the deeds filed in evidence. The symbol showing the points of the compass has also been added.

On the diagram the parcel of land in controversy does not appear as a separate lot. It lies directly east of lot 11, block 87, and between the northern and southern lines thereof extended eastwardly to low water mark on the Potomac river. The lot is 56 feet wide (by recent survey 56.84' wide), and is bounded on the west by lot 11, block 87, on the north and south by extension of the side lines of lot 11 eastwardly 95 feet to low water mark on the Potomac river and on the east by the low water line of the said river. It consists of that part of the shore and beach of the Potomac which lies immediately east of lot 11, block 87, and within the prolongation of its northern and southern lines to low water mark.

The common source of title begins with a deed from Jesse Heacock and wife, dated February 12, 1878, conveying to Henry J. Kintz, trustee, a tract of land containing several hundred acres bordering the Potomac river and known as "White Point Farm." The tract conveyed included this parcel of land and the surrounding area. In 1882, Kintz, trustee, caused a considerable portion of this tract to be subdivided into building lots, and laid out streets and parks therein. The subdivision thus first formed appears on a map made in 1882 by B. Hyde Benton, and called the map of 1882. As platted and laid off on this map, none of the lots either north or south of the "Hotel Reservation" extended to the river as do the lots in blocks 93, 97 and 101 on the accompanying diagram, a reproduction of the material part of the later map of 1884.

Lots in the subdivision were sold and conveyed by Kintz,

trustee, to sundry grantees by reference to and as appearing on the map of 1882; but the strip of land which extended northwardly and southwardly from the "Hotel Reservation" along the shore of the Potomac river was retained by him. He also retained the acreage known as the "Hotel Reservation," which appears in the center of the diagram and is not divided into lots.

The strip of land which he retained along the shore between the eastern line of the building lots and the western edge of the river extended to mean low water mark. It not only included the area between low and high water marks, but also some of the shore or beach above high water mark along and just east of the eastern line of the lots. This higher land was available as a passageway to and from the acreage known as the "Hotel Reservation."

In the brief of the defendants we are told, without contradiction, that a "street right of way crosses the land between the east line of lot 11 and the river." This is supported by the provision in the deed of Henry J. Kintz, trustee, to John T. Given and others, trustees, granting certain rights to lot owners in the subdivision, and in the reservation in the deed of the Receivers of Colonial Beach Company to Frank D. Blackistone, hereinafter referred to.

The area included in lots 11 and 12 of block 87 was, by the map of 1882, a part of the acreage which comprised the "Hotel Reservation," and, consequently, did not appear as lots on that map. No block number was designated on that map. The other lots which appear on the diagram lying south of the "Hotel Reservation" did appear on the map of 1882, though lots 9 and 10 of block 87 on the map of 1884 appeared on the 1882 map as lots 19 and 20. Other lots on the map of 1882 also bore different numbers from those assigned to them on the map of 1884. This accounts for the double numbering of certain lots on the above diagram.

After the map of 1882 was made, Kintz, trustee, by deed of October 31, 1882, conveyed to John T. Given and others, trustees, and their successors "for the joint benefit of the lot owners in the subdivision, forever" all the interest he had in the streets, avenues and parks shown on the said map and "all and any portion of the entire shore of the river between the building line and the river and all riparian rights of fishery or other rights

whatsoever as may be incident to the ownership of the shore,'' expressly reserving from the operation of the deed ''that portion of the river front not laid off in lots, shown on said map in front of his dwelling house allowing, however, a free right of crossing said present reservation at the river shore to the owners of lots in said subdivision, * * *.'' The ''Hotel Reservation,'' as we have seen, was not ''laid off in lots.''

As lots 11 and 12 of block 87 on the map of 1884 had not been then formed or cut from the ''Hotel Reservation,'' this deed did not convey the land immediately in front of lot 11, block 87, that is, the parcel now in controversy. It did, however, convey, for the purposes specified, all of the strip of shore and beach lying south of the north line of lot 20 on the map of 1882 (lot 10 on map of 1884) extended to low water, that is, it granted the strip of land along the shore which lies south of the lot now in controversy.

It thus clearly appears that the fifty-six by ninety-five foot lot in controversy did not pass from Kintz, trustee, to Given and others, trustees; but continued to be owned by Kintz, trustee, as a part of the area known as the ''Hotel Reservation,'' of which tract it constituted the most southeasterly part.

In 1883 Kintz, trustee, conveyed a lot of land that now comprises lot 11, block 87, to Florence H. Sawyer, who was the predecessor in title of Walter Hendrix and others, defendants in error. It is conceded that Kintz, trustee, was at that time the owner of the parcel of land now in controversy. Thereafter, all of the property of Kintz, trustee, shown on the map of 1884, except lots 11 and 12, block 87, (and other lots not pertinent to this case) was, after successive conveyances, vested in W. B. Emmert, trustee, by a deed from A. T. Holtzman and others, trustees, dated December 31, 1908. Emmert, trustee, thus acquired the ''Hotel Reservation'' which extended to low water line of the Potomac river, and also the parcel in controversy lying just east of lot 11, block 87, extending to the river.

On January 9, 1909, W. B. Emmert, trustee, executed a deed to Colonial Beach Company, a corporation, conveying certain lands, personal property, and rights under the following description:

''All of the following described property, lying and being in the Town of Colonial Beach, in the County of Westmore-

land, in the State of Virginia, on the waters of the Potomac River, and being more particularly described as follows, to-wit: A certain piece or parcel of land bounded on the south by block No. 87 and on the north by block No. 93, as shown on the plan of Colonial Beach, bearing the signatures of T. Hunter, Jr., and H. W. Brewer, and bearing date on April 30th, 1884; bounded on the west by the east line of Taggert Street extended and bounded on the east by the Potomac River, and being a part of what is known as the 'Hotel Reservation', and including the hotel and all of its furnishings and equipment and all buildings, machinery, apparatus, and all other property of whatsoever kind situated on said land and in the waters adjoining said land, including the wharf and all other properties, franchises and easements and rights now owned or which may hereafter be acquired by the parties of the first part in and to the waters and shore of the Potomac River in front of and adjoining the above described parcel of land, the said property hereby conveyed being a portion of that which was conveyed to the said W. B. Emmert, Trustee, by A. T. Holtzman, W. E. Chesley and John A. Nicol, Trustees by deed bearing date on the . . . . day of December, A. D. 1908, and of record in the Office of the Clerk of the Circuit Court for Westmoreland County, Virginia, to which deed particular reference is hereby made.''

The Receivers of the Colonial Beach Company, on December 23, 1920, conveyed the same property to Frank D. Blackistone, employing in the deed the identical words of description used in the 1909 deed from Emmert, trustee, to the Colonial Beach Company. The property was, however, conveyed ''subject to any lawfully established rights of way on and over the same.''

The issue before us turns on the question whether the land in controversy is included in the description of the property conveyed in the deed from Emmert, trustee, to Colonial Beach Company. The trial court was of the opinion that it was not, and held that since Colonial Beach Company, predecessor in title to the plaintiffs in error, did not obtain title to the land, the plaintiffs in error did not acquire it.

Analyzing the deed in question we find that it conveyed several classes of property. First named is real property, which

is particularly described by specific boundaries as shown on a recorded map and, generally, as being a part of what is known as the "Hotel Reservation," including the hotel building. Next comes all the furnishings and equipment of the hotel and all buildings, machinery, apparatus, and all other property of whatsoever kind *"situated on said land and in the waters adjoining said land,"* that is all property situated on the described land and in the waters adjoining it. The remaining grant included "the wharf and all other properties, franchises and easements and rights now owned or which may hereafter be acquired by" the grantor in and to the waters and shore of the Potomac river *"in front of and adjoining the above described parcel of land,"* that is, *in front of and adjoining* the land conveyed within the described boundaries. (Italics added).

It will be observed that the grantor in one place described the land conveyed as "being a part of what is known as the 'Hotel Reservation,'" and again as "being a portion of that which was conveyed to the said W. B. Emmert, Trustee, by A. T. Holtzman," and others. He refrained from describing it as being all of the remaining portion of the "Hotel Reservation," or of that which was conveyed to him by Holtzman and others.

The language of the deed is simple, clear and explicit. It requires no interpretation. There is no part of the description out of harmony with, or repugnant to any other part. Giving to the words employed their general and ordinary meaning, they imply no doubt or obscurity and are capable of but one meaning.

It is clear that the eastern front of the land conveyed lies between the southern boundary line of block 93 and the northern boundary line of block 87 extended to the waters of the Potomac river. Its southerly boundary line excluded any land south or east of block 87. Furthermore, the parcel in controversy is not bounded on the south by block 87. It is bounded on the south by the prolongation of the northerly line of a parcel of land (lot 10, block 87, map of 1884), which lies fifty-six feet from the line described as the southern boundary of the land conveyed. While it adjoins the land described in the deed, it is to the side and not to the front of it. The grantor's understanding of the words used is plainly stressed by what he said, and in the distinction he makes between the use of the word "adjoining" when he refers to certain property, and in the words "in front of and adjoin-

ing,'' which he employs in the conjunctive in connection with the wharf and the intangible rights mentioned. The conjoined words are used in a limiting sense, and exclude any property or rights which are not immediately in front of the land conveyed.

The parcel of land involved is not ''in front of'' the land described in the deed. It is in front of and adjoins lot No. 11. It does not come within the designation of property situated on the land conveyed and in the waters adjoining said land, nor within the classification of ''franchises and easements and rights'' in and to the waters of the Potomac river in front of and adjoining the land conveyed.

The town of Colonial Beach is a watering resort, located on the Potomac river, in Virginia, not far from the City of Washington, D. C. That the owners of the lands hereinbefore described appreciated the rights appurtenant to waterfront property is shown by the deeds in evidence.

In the construction of deeds it is to be remembered ''That it is the duty of the court to give the proper meaning to every word used in the instrument if possible.'' *Morris* v. *Bernard*, 114 Va. 630, 77 S. E. 458; *Browning* v. *Bluegrass Hdw. Co.*, 153 Va. 20, 26, 149 S. E. 497.

''Effect and meaning should be given to every part of the deed, if it can be done consistently with the rules of law.'' 26 C. J. S., Deeds, § 84 b, page 330. Words descriptive of the land conveyed should be given their established, definite, usual and ordinary meaning, unless a contrary intent appears. 16 Am. Jur., Deeds, § 277, page 595.

It is not permissible to interpret that which has no need of interpretation. '' 'The province of construction lies wholly within the domain of ambiguity.' If it is too plain to misunderstand, there is nothing to construe.'' *Norfolk Motor Exch.* v. *Grubb*, 152 Va. 471, 478, 147 S. E. 214, 63 A. L. R. 310.

In 6 Thompson on Real Property, Perm. Ed., § 3289, this is said: ''To justify the suppression of a part of a description it must not only be out of harmony with other parts of the description; but it must be undeniably so in some important respect, after putting a reasonable construction upon the rest of the description.''

''It is a well-settled rule of construction that inasmuch as the parties must have intended all the provisions and terms

of a deed to have some meaning and be given some import, from the fact that the terms and provisions were actually inserted in the deed, a deed will be so interpreted as to make it operative and effective in all its provisions, if its terms are susceptible of such interpretation. Every word, if possible, is to have effect, for, it has been said, the deed, as the witness to the contract between the parties, should speak the truth, the whole truth, and nothing but the truth." 16 Am. Jur., Deeds, § 171, page 534. *Realty Securities, etc., Co.* v. *National Rubber, etc., Co.,* 122 W. Va. 21, 7 S. E. (2d) 49, 51.

■ According to all of the authorities where a general word is followed by a description of particular subjects or things, its meaning is restricted by the particular designation, and includes only things or subjects of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation to the contrary. We find no manifestation that the deed included land south of the northern boundary line of block No. 87, any more than it included blocks 89 and 91 on the north which lie south of block No. 93 on the map of 1884.

The proper rule to be applied here is that stated by Buchanan, J., in *State Sav. Bank* v. *Stewart,* 93 Va. 447, 451, 25 S. E. 543, 544:

■ "Where several particulars are given in the description, all of which are necessary to identify the land intended to be conveyed, nothing but what will correspond with all the particulars will pass by the deed; but where the deed contains two descriptions of the land equally explicit, but repugnant to each other, that description which the whole deed shows best expresses the intention of the parties must prevail." *Mathews* v. *Gillespie,* 137 Va. 639, 647, 120 S. E. 324.

■ There is no repugnancy in the particulars of the descriptive phrase, "in front of and adjoining the above described parcel of land." Only that property which corresponded with all the particulars named passed by the deed. There is a conclusive presumption that all property not embraced within the description of a deed is excluded from it. We cannot disregard either the particular description of the real property conveyed or the particulars applicable to property described as being "in front of and adjoining" the above real property.

It is clear, we think, that the land in question lies outside of

the boundaries and description of the deed from Emmert, trustee, to Colonial Beach Company, predecessor in title of the plaintiff in error, and that it does not come within the classification of "other property" conveyed by the deed. For these reasons we are of opinion to affirm the judgment of the trial court.

*Affirmed.*

MILLER, J., dissenting.

The trial court decided that the description of the property conveyed by the deed of January 9, 1909, from W. B. Emmert, Trustee, to Colonial Beach Company, (which description is set out at length in the majority opinion), did not include the parcel of land in litigation. The majority opinion not only sustains that conclusion but in bold and assured language says:

"The language of the deed is simple, clear and explicit. It requires no interpretation. There is no part of the description out of harmony with, or repugnant to any other part. Giving to the words employed their general and ordinary meaning, they imply no doubt or obscurity and are capable of but one meaning."

I cannot agree with that statement, or with the legal conclusion reached.

In view of the present division of opinion on the court and remembering the difficulties encountered at conference, I read that paragraph with a feeling of some surprise and dismay. If the question presented is as simple as stated, then there is nothing to decide, and I wonder why the litigation was ever instituted and how it ever gained admittance to this court. However, it is here, and if the language is clear and explicit, and "requires no interpretation," it would seem that Justice Holt's brief observation in *Title Ins. Co.* v. *Howell,* 158 Va. 713, 718, 164 S. E. 387, "Ambiguities may be cleared away and weasel words explained, but that which is plain needs no explanation," would be sufficient to end all further discussion of the matter.

Yet, after making the positive statement that the grantor's language "requires no interpretation," four pages of interpretation, quotation of rules of construction, and argument are set forth to prove what the "clear and explicit language" really means.

To reach a final conclusion, I cannot start from the assumed premise stated in the majority opinion, which is that the language is "capable of but one meaning." On the contrary, I think the description is uncertain, inconclusive, unclear and ambiguous, and that is the reason I must resort to recognized rules of construction to reach, what I consider, a correct conclusion. Yet, before doing so, I venture to say that there are others who, upon reading the description, will not find it simple, clear and definite.

It is conceded that the deed conveyed all of the "Hotel Reservation" east of Taggert street, extended, except this small parcel of land. The majority opinion chides the grantor, W. B. Emmert, Trustee, for not further describing the land conveyed "as being all of the remaining portion of the 'Hotel Reservation,' or of that which was conveyed to him by Holtzman and others," if he intended to grant this parcel in controversy.

Well, let's see if he should have used *that* broad and inclusive language.

The majority opinion does not tell us so, but an inspection of the deed of December 31, 1908, from Holtzman and others to W. B. Emmert, Trustee, discloses that those grantors conveyed to Emmert, Trustee, about seventy-five lots of land described by numbers and three tracts of land, i. e., 260.15 acres, 51.25 acres, and 28 and a fraction acres, the last mentioned tract being what was called the "Hotel Reservation." All of these lots and tracts of land adjoined, or were in close proximity to, each other and made up much of the area known as Colonial Beach. The 28 acres known as the "Hotel Reservation" was composed of an area, part of which lay east and part west of Taggert street, extended, as shown by the map of 1884. The record does not disclose that any of these lots, or any part of the three tracts of land, had been granted or disposed of by Emmert, Trustee, when he made the deed of January 9, 1909, to Colonial Beach Company. So, if Emmert, Trustee, had used all of the descriptive language suggested in the majority opinion as quoted above, he would have, it is true, more definitely granted the lot in question, but he would have also conveyed to Colonial Beach Company some seventy-five other lots and the 260.15 acre tract, the 51.25 acre tract, and that portion of the "Hotel Reservation" that lay west of Taggert street, extended, none of

which that Company had purchased. Or he would, at least, have fouled up and beclouded the title to all those lots and the several tracts of land, for the lots and that acreage made up the greater part of the land that had been "conveyed to him by Holtzman and others." If he had used only part of the language suggested by the majority opinion, *i.e.,* "all of the remaining portion of the 'Hotel Reservation' * * *," he would have conveyed or beclouded the title to that part of the reservation that lay west of Taggert street, extended, which obviously was not intended to be granted to Colonial Beach Company. I think 311 or more acres, and seventy-five lots are too much bonus or free land to include inadvertently in a grant just because a grantor wants to be sure he is getting rid of a few feet of the shore of the Potomac River.

It is stated that the grantor did not intend to, and did not, convey this area by the description used, though it was part of the reservation and lay east of Taggert street, extended. I have grave doubt that the grantor ever consciously thought of this small tit of land when the deed was executed, and thus entertained no intent, specifically directed to whether it was or was not within the descriptive boundaries stated. If he did not intend to convey it, (and the majority opinion holds that he did not), then obviously he should have definitely excluded it by proper language from the grant of the acreage that it *adjoins* and of which it is a part.

If the truth were known, it is quite probable that neither the grantor nor the draftsman of the deed, if other than he, ever thought about or considered the existence of the small piece of shore now in litigation. Yet the language used is, I think, uncertain and ambiguous, and may be reasonably construed to include it. Therefore, under recognized rules of construction, it should be taken to have been granted to Colonial Beach Company.

In determining what the grantor did actually convey, not only must the facts and circumstances established by the several deeds and maps filed in evidence be remembered, but the following principles of construction of deeds should, I think, be applied to ascertain just what is the legal import and effect of the language used by the grantor.

Though the cardinal rule is that the intention of the parties

fairly drawn from the entire instrument must govern, yet there are other well recognized principles of construction which may be often resorted to for help in interpreting the instrument. Among these is that uncertain, indefinite, equivocal or ambiguous language should be construed against the grantor and in favor of the grantee. It is stated thus in the following authorities:

"Since a deed is prima facie an expression of the intent of the grantor, the courts, in construing ambiguous, uncertain or repugnant descriptive terms therein, will give them a construction against the grantor and favorable to the grantee with respect to the quantity of land conveyed in conformity with general rules governing the construction of deeds." 16 Am. Jur., Deeds, sec. 286, pp. 599, 600.

"The general rule is well settled that if there is any ambiguity in a deed so that it is capable of two possible constructions, one of which will be more favorable to the grantee, the other of which will be more favorable to the grantor, that method of construction which will be more favorable to the grantee will be selected and the deed will be construed against the grantor. * * * The rule is predicated upon the reasoning that since a grant is expressed in words of the grantor's own selection, it is, prima facie, an expression of his intention, and he is therefore chargeable with the language used. If, therefore, the deed can inure in different ways, the grantee, it is said, may take it in such way as will be most to his advantage." 16 Am. Jur., Deeds, sec. 165, p. 530.

"Where deeds conveyed land abutting on a highway, along the high water line, describes the boundary as 'the sea or highway', 'beach and highway', 'bank and highway', the grantee may adopt the boundary most favorable to him." Merwin v. Backer, 80 Conn. 338, 68 A. 373.

Another applicable principle of construction is that all of the words used should, if possible, be given recognition and effect, and the intent of the parties, thus fairly gathered from all of the language employed, carried out. The true inquiry is not what the grantor meant to express but what the words actually used mean and express.

"Some meaning should be given to every clause, word, and expression, if it can reasonably be done, and is not inconsistent

with the general intent of the whole instrument. \* \* \*'' 26 C.J.S., Deeds, sec. 86(b) (1), p. 332.

''The rule governing the construction of deeds is well stated in 16 Am. Juris. 534: 'It is a well-settled rule of construction. that inasmuch as the parties must have intended all the provisions and terms of a deed to have some meaning and be given some import, from the fact that the terms and provisions were actually inserted in the deed, a deed will be so interpreted as to make it operative and effective in all its provisions, if its terms are susceptible of such interpretation.'

''This is not a new doctrine. One of the canons of construction stated in Blackstone, Book II, Chap. 23, p. 379, is, 'That the construction be made upon the entire deed, and not merely upon disjointed parts of it. And therefore that every part of it be (if possible) made to take effect and no word but what may operate in some shape or other.' '' *Realty Securities, etc., Co.* v. *National Rubber, etc., Co.,* 122 W. Va. 21, 7 S. E. (2d) 49, 51.

Virginia decisions in accord with these principles of construction are *Bailey* v. *Hill,* 77 Va. 492, *Flanary* v. *Kane,* 102 Va. 547, 46 S. E. 312, 681, *Wilson* v. *Langhorne,* 102 Va. 631, 47 S. E. 871, *Browning* v. *Bluegrass Hdw. Co.,* 153 Va. 20, 149 S. E. 497.

I now test the descriptive language in the deed under these rules of interpretation to determine what area was conveyed.

In the first line of the paragraph which designates and describes what is conveyed we find the broad and inclusive word ''property.'' As there first used, it is evident that it is intended to refer to both real and personal property. When again used it should be given like import unless there be something to indicate that a different meaning is intended.

''Where words in one part of the instrument are construed according to one meaning, words in other parts thereof should ordinarily be given the same construction.'' 26 C. J. S., Deeds, sec. 86(b) (1), p. 332.

The main body of land conveyed is then described as bounded by Blocks 87, 93, Taggert street, extended, and the Potomac River. But that is not all that is included in the comprehensive language used for it continues on and conveys other *property,* rights and interests. It also states that the land conveyed is a

part of the "Hotel Reservation," and it should be remembered that the "Hotel Reservation," when first set aside as such on the map of 1882, included this parcel in controversy. After including in the description the hotel, which is real estate, and certain personal property, the description of what is conveyed continues as follows:

"* * * and all other *property* of whatsoever kind situated on said land and in the waters adjoining said land, including the wharf and all other *properties,* franchises and easements and rights now owned or which may hereafter be acquired by the parties of the first part in and to the waters and *shore* of the Potomac River in front of *and adjoining* the above described parcel of land * * *." Emphasis supplied.

This parcel of land 56' by 95' is a part of the shore of the river and it *adjoins* the above described main tract conveyed by the deed. All of the shore immediately in front of the main tract and all rights therein would have been adequately conveyed by the use of the words "in front of * * * the above described parcel of land", and unless the words "and adjoining" are to be given some meaning or significance other than "in front of," then they are wholly tautological. If they are to be given their true import and significance or mean anything as they follow the phrase "in front of," then they must refer to and include the lot of land in question which is "not in front of" the main tract and thus not covered by that phrase, but which does *adjoin* the main tract conveyed and is included if effect be given the words "and adjoining." It is also to be remembered that unless this construction be given the language, then the southern and eastern boundaries of the tract conveyed do not meet at the southeast corner, and the description is incomplete.

When W. B. Emmert, Trustee, executed the deed in question of January 9, 1909, to Colonial Beach Company, if he had desired to exclude this parcel of land from the grant and thus retain its ownership, some language or word to indicate that intention with reasonable certainty should and would, I think, have been used to accomplish that purpose. 26 C. J. S., Deeds, sec. 140, pp. 450, 451. Yet, examine and weigh the language as you will, there is found no word or intimation that the parcel

in question was *intended* to be retained, excluded or excepted from the grant.

The grantor having failed to exclude this small parcel of shore, the incomplete, ambiguous and unclear language should be construed against him and held to include the area in question.

In my opinion, the description of the land granted by Emmert, Trustee, to Colonial Beach Company by deed of January 9, 1909, is uncertain, indefinite and equivocal. Upon application of the recognized principles of construction herein adverted to, and I think they should be applied, they would necessarily result in a finding that includes the parcel of land within the grant.

For the reasons stated, I think the judgment should be reversed and the proceeding remanded for a new trial.

HUDGINS, C. J., and WHITTLE, J., concur in this dissent.