## Staunton.

S. W. BROWNING, ET ALS, v. BLUEGRASS HARDWARE COMPANY, INC., ET ALS.

September 19, 1929.

Absent, West, J.

22

The opinion states the case.

*John. T. Wassom* and *Buchanan & Buchanan*, for the appellants.

*S. B. Campbell*, *T. F. Walker*, *W. C. Thomas* and *W. B. Kegley*, for the appellees.

HOLT, J., delivered the opinion of the court.

This suit was instituted on the 7th day of March, 1928, and on the same day, in the same court, another suit was brought by *W. A. Umberger et als, partners, etc.* v. *S. W. Browning, et als.* Each was a creditor's bill and each sought to subject to the payment of debts there set up a certain tract of 216 acres of land in the bills described. They were consolidated and in them, on August 31, 1928, the trial court decreed that the land in judgment was owned in fee simple by S. W. Browning and Rachel C. Browning, his wife, and subject to their debts. This holding is now before us on appeal.

S. W. Browning and wife derived title by deed of November 29, 1898. Upon its construction this issue turns. This is the deed:

"This deed, made this 29th day of November, 1898, between S. P. Browning and Susan F., his wife, of the one part, and S. W. Browning and Rachel C., his wife, of the second part, all of Wythe county, Virginia, witnesseth, that for and in consideration of natural love and affection and further in consideration of the

sum three thousand dollars ($3,000.00/100) cash in hand paid by the father of the said Rachel C. Browning unto the said S. P. Browning, the receipt whereof is hereby acknowledged.

"Therefore the said S. P. Browning and Susan C., his wife, do hereby deed, grant, and convey with terms of general warranty, unto the said S. W. Browning and to the said Rachel C., his wife, a certain tract or parcel of land lying and being in Wythe county, Virginia, along the waters of Reed creek, and the waters of Tates run, and adjoining the other lands of S. W. Browning and A. J. Simmerman and others, said tract is bounded as follows:" (Here follows a description of the land.)

"And it is stipulated by the said S. P. Browning and Susan F., his wife, that this tract of land shall be for the sole use and benefit of the said S. W. Browning and Rachel C. Browning and for their children only, and that this land shall not be chargeable for any debts or liabilities, contracted by either party of the second part, but they may deed it to their children as they deem proper. It being the intention of the parties of the first part that this deed and transfer shall be as a gift, not to be subject to sale, for debts, liabilities etc., contracted by the said parties of the second part.

"And further it is stipulated by the said S. P. Browning and Susan F., his wife, that they are each and severally to have use and occupancy of said land, and all buildings and appurtenances thereon, for their natural life, but after the death of both of them, then the parties of the second part shall have full and entire occupancy and control of said property, and further it is stipulated that C. W. Browning and Bessie Richardson shall have right to use the timber in the bluff on the west bank of Reed creek below the R. R. bridge and also on the timbered land adjoining it above the

meadow known as the Reed creek meadow; and C. W. Browning shall have use of the present road leading up to the barn and to have the right to use water from this tract by pipes or otherwise provided it does not damage the use of said water to this tract.

"And further the parties of the first part stipulate that they have good and indefeasible right and title to the land hereby conveyed and that they have right to deed and convey the same to the parties of the second part and to their children by the name of Browning forever. In testimony whereof witness the following signatures and seals this 29th November, 1898:

"S. P. BROWNING (Seal)
"S. F. BROWNING (Seal)."

S. W. Browning and his wife became involved in debt, and on the 20th of October, 1927, executed a general deed of assignment for the benefit of creditors, in which they conveyed to a trustee 290 acres of land, not in dispute, and "also the proceeds from the joint life estate owned by them in the 216 acres of land conveyed to the parties of the first part by S. P. Browning and wife, by deed dated November 29, 1898, and recorded in said clerk's office in Deed Book No. 45, page 191, for a term of two years from this date. The said S. W. Browning is to manage the land hereby conveyed, as well as the 216 acres hereinbefore mentioned, and is to turn over to the said W. C. Thomas, trustee, the entire net proceeds and income from said lands including income from said mill as above stated, except a reasonable amount for the living expenses of the said S. W. Browning and family, not to exceed $1,000.00."

Afterwards and on the 3rd of April, 1928, S. W.

Browning and wife conveyed this 216-acre tract to their children, Bessie Browning Rice, Virginia Browning, Sylvester F. Browning and F. C. Browning. This deed purports to be executed under a power of appointment contained in the deed of November 29, 1898.

In the construction of deeds, certain well established rules are to be remembered. This statement of them was approved by Judge Keith, in *Morris* v. *Bernard*, 114 Va. 630, 77 S. E. 458, 460:

"(1) That all parts of the deed must be considered and that construction adopted which will carry out the intent of the parties, which intent must be gathered from the language used; that the true inquiry is not what the grantor meant to express, but what the words do express.

"(2) That where words are used which have a well defined technical meaning, they should be given their technical meaning. And this is especially true when it can be seen, as in the case at bar, that the deed was drawn by a professional hand.

"(3) That it is the duty of the court to give the proper meaning to every word used in the instrument if possible."

"(4) That if it appears that two provisions of a deed are in irreconcilable conflict, the last provision yields to the first and the first must be given its full effect.

"(5) And when a provision is made in a deed in clear, explicit and unambiguous words, it cannot be revoked by implication by a later clause in the deed, but if revoked at all, must be by terms as clear, decisive and explicit as the terms by which the first estate was given.

In *Wornom* v. *Hampton N. & A. Inst.*, 144 Va.

533, 132 S. E. 344, 347, Judge Prentis declared this to be the established rule: "It is a settled rule, in the construction of instruments, that if an estate is conveyed and interest given, a benefit bestowed in one part, by clear, unambiguous, explicit words, upon which no doubt could be raised; to destroy or annul that estate, interest, or benefit, it is not sufficient to raise a mist and create a doubt from other terms in another part of the instrument. Possibilities and even probabilities will not avail. The terms to rescind or cut down the estate or interest before given must be as clear and decisive as the terms by which it was created. If the benefit is to be taken away, it must be by express words or by necessary implication."

██  Within these limits, it is the court's duty to give effect to the intention of the grantors so far as it can be ascertained from the four corners of the deed itself. *Payne* v. *Kennay,* 151 Va. 472, 145 S. E. 300. The best evidence of such purpose is the grantor's own declaration. That, as there written, takes it out of the realm of speculation. This is what S. P. Browning and his wife said: "It being the intention of the parties of the first part that this deed and transfer shall be as a gift, not to be subject to sale for debts, liabilities, etc., contracted by the said parties of the second part."

The major purpose, so plainly stated, was to place this property beyond the reach of the grantees' creditors—in substance, to establish a spendthrift trust. But by the Code of 1887, section 2428, estates of every kind are subject to the debts of those for whose benefit they are holden and it was not until the adoption of the Code of 1919, section 5157, that they can in any circumstances be established. *Thomas* v. *House*, 145 Va. 742, 134 S. E. 673.

██  It is likewise plain that these children take

nothing directly under the deed. It is true that this recital is there written: "And further the parties of the first part stipulate that they have good and defeasible right and title to the land hereby conveyed and that they have right to deed and convey the same to the parties of the second part and to their children by the name of Browning forever  In testimony whereof witness the following signatures and seals this 29th of November, 1898."

The grantors had the right to execute a deed to S. W. Browning and wife and to their children. Had they seen fit to do so, the children would have taken. *Fitzpatrick* v. *Fitzpatrick*, 100 Va. 554, 42 S. E. 306, 93 Am. St. Rep. 976; *Goodloe* v. *Woods*, 115 Va. 547, 80 S. E. 108. But it was not done. The children are mentioned as indicative of the motive of the gift so far as it was a gift at all and for no other purpose. *Payne* v. *Kennay*, 151 Va. 472, 145 S. E. 300.

Undoubtedly the granting clause conveys the land in fee simple to S. W. Browning and to Rachel C. Browning, his wife. The language is clear, unambiguous and explicit, and the estate so granted can only be cut down by the use of terms equally clear.

If these grantees do not take a fee simple estate, what estate do they take? Their deed of assignment recites that it is one for life. No such limitation is written into the deed to them. They might, with equal plausibility, have claimed that it was for a term of years, for the life of another, or a base fee. "Possibilities and even probabilities will not avail." *Wornom* v. *Hampton, supra*. To diminish a fee given the language must be clear. *Wolverton* v. *Huffman*, 104 Va. 605, 52 S. E. 176

This is true whether the limitation arises out of a power of appointment or otherwise. Appellants claim

that such a power is here given. If so, what is its nature. Is it one in gross, such as cannot attach to the interest of the grantee, or is it a power appendant, which may limit and curtail the estate of the donee of the power? To answer this we are put to the hazard of conjecture. Something more than guess work is needed to⁹ rescind a grant, nor is it necessary that we apply the rule which gives to a granting clause precedence over the *habendum* in a case of irreconcilable conflict.

But it is said that even if the estate be absolute, it is still possible to engraft thereon a power of appointment. It is on this claim that the case turns.

▮▮ What is a power of appointment? Judge Saunders, in *Davis* v. *Kendall*, 130 Va. 175, 107 S. E. 751, 759, adopts this satisfactory definition: It is "an authority enabling one person to dispose of the interest which is vested in another." He there said: "The authorities from which we have cited, including the valuable monograph in 3 Virginia Law Register, *supra*, clearly establish the distinction between a gift for life, with a power of disposition added, and a gift to one indefinitely, with the power of disposition by deed or will."

In the first case the power stands; in the second it is merged in the fee, for it is to be remembered that a power is an authority given one person to dispose of an interest vested in another and not in himself.

▮ In *Burwell's Executors* v. *Anderson's Admr.*, 3 Leigh (30 Va.) 348, 356, Judge Tucker makes this statement: "And where an interest is given, generally, and without limitation, that gift is not converted into a mere power, by annexing thereto a general power of disposition. As a devise to A. with power to dispose at pleasure, is considered as conveying property, not as

conferring power; for the words of power will not be permitted to take away what without them is expressly given. 2 Preston on Est. 81, 2. 13 Ves. 453. But where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different. For the express estate for life negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest. This appears to me to be very clearly established by the cases that were cited at the bar; which further lay it down, that where an interest and not a mere power is conferred, the absolute property is vested without any act on the part of the legatee, but where a power only is given, that power must be executed or it will fail."

Mr. Freeman, in a note appearing in 41 Am. Dec. 704, said: "Indeed a technical power is so inconsistent with absolute ownership that they can not coexist. The principle is very well stated by Parker, C. J., in *Eaton* v. *Straw*, 18 N. H. 320, as follows: 'A general power of disposition does not necessarily imply ownership. In fact, the existence of such a power, as a technical power, excludes the idea of an absolute fee simple in the party who possesses the power. The absolute fee simple including and involving the power of disposition, no technical power as a mere power could exist in the same party, separate from and independent of it. It would be preposterous for the owner of an absolute estate in fee simple to make a conveyance of his estate, under a technical power over it, even if the language in the constitution of a power as usually expressed were superadded to the conveyance in fee by which he took his estate.'"

See also, on this general subject, *Shermer* v. *Shermer's*

*Executors*, 1 Wash. (1 Va.) 266, 1 Am. Dec. 460; *Smith v. Starr*, 3 Whart. (Pa.) 62, 31 Am. Dec. 493; 31 Cyc. 1050; *Jennings v. Conboy*, 73 N. Y. 230; *Roberts v. Lewis*, 153 U. S. 367, 14 S. Ct. 945, 38 L. Ed. 747; Graves on Real Property, section 243. The rule would seem to be otherwise in England. Tiffany on Real Property, section 331.

So long as no law is violated, a man may do what he pleases with his own. Permission to do so is surplusage. To give A. property in absolute estate, and to say that he might give it to the University, would be for the University but a futile gesture of beneficence. Of course he may give it to the University, and he may give it for the ethical uplift of the heathen. How can a donee be at once a channel of conveyance and the basin into which title has emptied? When the donor has invested the donee with a fee simple title, there remains nothing to be carried over to the appointee, and if the appointee takes at all he must take from the donee and not from the donor, which in principle can never be the case.

If powers of appointment are of avail in deeds in fee, they might always be added as anchors to windward, valuable in stress of weather, and would be but a new hazard to credit extended on the faith of assets held. It is to be remembered that the character of the deed in judgment is not dependent upon construction arising out of any authority to convey, but rests upon an unambiguous grant with general warranty of title.

A life estate is not converted into a fee because a grantee is given unrestricted "use" of it (*Hurt v. Hurt*, 121 Va. 419, 93 S. E. 672), although the right to "control" may in certain circumstances affect such a change (*Steffey v. King*, 126 Va. 120, 101 S. E. 62). While these powers may not be adequate to change a

life estate into a fee, they are plainly insufficient to diminish a fee already given. We have seen in *Burwell's Ex'ors* v. *Anderson's Admr., supra*, that where there is an absolute power of disposition coupled with a general power of appointment, the latter fails, but that the rule is otherwise where the donee is given an express and inconsistent estate for life. In the instant case, we have a fee simple estate to which a special power of appointment is added.

Where a donor gives a life estate coupled with a special power of appointment, equity, in a contest between the heirs and appointees, will distribute the estate among the latter (Minor on Real Property, section 1336); but it is only when the donee's estate is limited that equity undertakes to exercise any such supervision. We know of no case in which such appointees have invoked its aid against a donor in fee, or which hold that any such provision, *proprio vigore*, gives to the appointees that right. If given, the intention must plainly appear in the deed itself. *Wornom* v. *Hampton N. & A. Inst., supra.* The deed in judgment, so far from showing such intention, seems to express a contrary purpose, for the donors reserved for themselves a life estate but made no such reservation in the estate given to the parties of the second part.

There is an exception which grows out of convenience and sometimes out of necessity. When the grantee of an estate is under disability, a power of appointment may be given, even though the estate be one in fee simple, as, for example where he is an infant, 31 Cyc. 1039, 1097; Tiffany on Real Property, section 321.

The same rule applies to a *feme covert*. Textbook Citation, *supra; Woodson* v. *Parkins*, 5 Gratt. (46 Va.) 345.

"It is thoroughly well settled that at common law a married woman could, without the consent or concurrence of her husband, execute a power, whether appendant, in gross, or simply collateral, notwithstanding her disability to dispose of her own estate. And it is of no consequence whether the power was granted to her before or after she became a married woman." *Young* v. *Sheldon*, 139 Ala. 444, 36 So. 27, 28, 101 Am. St. Rep. 44.

In this there is reason. The donor of the power may wish to give to the donee a freedom of action, a power of disposition which he would not otherwise have. There is nothing inconsistent in such a transaction, and it may readily be distinguished from a case in which the donee would have the untrammeled power to convey to the appointee by virtue of his own ownership and independent of any grant from the donor.

This distinction is illustrated by the Virginia cases. *Shearman* v. *Hicks*, 14 Gratt. (55 Va.) 96, deals with a will executed in 1851 under a power of appointment given by a deed of date March 18, 1835. The question there was the right of Celia Shearman, who was given a reversion in fee after a life estate, to dispose of the fee under this power during the lifetime of her husband, the life tenant. This she did by will. There was a contest between her heirs and devisees. The power was collateral to the fee simple at the time that she executed it, the fee simple had not come into possession, her husband being still alive. The court held that under the circumstances, in that case, the power was not merged in the fee, as it manifestly was not. Mrs. Shearman labored under the disabilities of coverture, and during its continuance could not make a will at all unless it was made in the execution of a power of appointment or disposed of her separate estate (Code

1849, chapter 122, section 3), although the wife always had power to devise her separate estate when that estate consisted of personality. *West* v. *West's Executors*, 3 Rand. (24 Va.) 374; *Lee, et als* v. *The Bank of the United States*, 9 Leigh (36 Va.) 200; *Dillard* v. *Dillard's Executors*, 2 Va. Dec. 28, 21 S. E. 669. No such power, however, existed as to the *corpus* of real estate unless it was reserved by articles before marriage or by the instrument creating the estate. Hence the necessity for the statute and for a power of appointment. A fee simple estate would not suffice, but the capacity to execute a power was given, as we have seen, by statute, and existed at common law. Tiffany on Real Property, section 321. The disabilities of coverture did not affect the power for the same reasons that the disabilities of infancy will not prevent its execution when plainly conferred.

In *Thorndike* v. *Reynolds*, 22 Gratt. (63 Va.) 21, the court was called upon to deal with a will executed in 1869. There a husband willed his property in fee simple to his wife, should she survive him, and authorized her to execute a will during his lifetime. She did survive her husband and took the property in fee simple. The question in this case was the validity of the power of the wife to execute her will during her husband's life. She did so execute it and the court held the will to be valid. Here also the court had to deal with disability during coverture. It said: "The only disability to make a will was the disability of coverture. From that she is relieved by the act of her husband. That disability being removed, she makes and publishes her will in the presence of her witnesses, and with all the solemnities required by law. There is no reason why she should make it over again after her husband's death. It was executed strictly within the terms of the power granted."

The donor may select his conduit and indicate the manner in which the power must be executed. It is not necessary that the donee, as an independent proposition, should have the power to act at all. The disabilities of married women have disappeared and therefore the exception to the general rule dealt with in these Virginia cases has no application.

By way of recapitulation, we are inclined to the opinion that S. P. Browning and wife intended to create a spendthrift trust. We are further of opinion that if a power of appointment was intended, it is tacked on to a fee simple estate and is merged in it, from which it follows that the deed from S. W. Browning and wife to their children is a deed of gift, void as to creditors, and that the land conveyed is subject to the debts of the grantors. The decree appealed from must be affirmed, and it is so ordered.

*Affirmed.*