# HERMAN WEST, ET AL.

## v.

# ROBERT LEE HINES, JR., EXECUTOR, ETC., ET AL.

Record No. 920859

April 16, 1993

Present: All the Justices

*J. Leigh Griffith; Robert N. Pollard, III (Waller, Lansden, Dortch & Davis; Christian, Markham & Dolbeare*, on briefs), for appellants.

*D. French Slaughter, III; Bruce M. Marshall; Hugh T. Antrim (Thomas S. Word, Jr.; Thomas A. Cooper; McGuire, Woods, Battle & Boothe; Durette, Irvin, Lemons & Fenderson; Thompson & McMullan,* on brief), for appellees Robert Lee Hines, Jr., Individually, Twyla Willey Gunter, Individually and Sara Rigel.

(Frank O. Brown, Jr. for appellees Robert Lee Hines, Jr., Executor and Trustee, etc. and Twyla Willey Gunter, Executor and Trustee, etc.)

No brief or argument for appellees Lee Baxter Hines, Eugene Douglas Gunter, Frances Lloyd Montgomery, Anne Lindsay Williamson Rodrigo and Anne Rigel Segar.

JUSTICE WHITING delivered the opinion of the Court.

This will construction case involves a determination of the effect of changes made by codicils.

Anne Lindsay Gunter died on January 19, 1991, survived by her husband, Eugene Douglas Gunter. Mrs. Gunter's holographic will, dated September 13, 1985, and containing six holographic codicils,

was probated in the Circuit Court of Henrico County on January 31, 1991.

On July 26, 1991, the executors of Gunter's will filed a suit to construe several provisions of the will and codicils, the pertinent provisions of which follow:

*Article Two*

I leave my entire estate in trust for my husband Eugene Douglas Gunter his lifetime, if he survives me. If my husband does not survive me--[t]hen I direct that all my personal and real estate be sold and the net proceeds be added and disposed of as part of my Trust Resid[u]ary.

*Article Three*

All the rest, residue, and remainder of my property, real and personal Trust, I give, devise, and bequeath to the hereinafter named Trustees herein referred to as my Trustees, to be held[,] administered and di[s]posed of by them upon the following Trusts.

A. [Payment of all net income to husband if he survives with power to invade corpus for husband's support and maintenance.]

B. Upon the death of my husband should he survive me, or upon my death should he not survive me, my Residuary Trust as then constituted shall be reduced and disposed of as follows.

(1) There shall be paid over and delivered to the following named persons if they are then living, that is, living at my husband's death should he survive me or living at my death should he not survive me, the amount designated for them as follows—

[Bequests of $10,000 each to Mollie West Boissieux, Robert Lee Hines [,Jr.] and Twyla Willey Gunter, and $10,000 to Herman and Clara Faye West *"willed as one."*]

(2) The Remainder of my Residuary Trust be paid over in equal shares to such of the following named persons who are living at my husband's death should he survive me, or living at my death should he not survive me. [The same five individuals as those in the preceding paragraph are named, with the Wests designated as "Herman and Clara Fay[e] West."]

The will gave the trustees and executors "in addition to all other powers granted by law . . . the powers set forth in Section 64.1-57 of the Code of Virginia of 1950, as amended, as in force at the date of this will, which powers in whole are by this reference incorporated herein." Code § 64.1-57(1)(b), in effect when the will was executed, authorizes executors and trustees to "sell . . . any and all investments and property, either real, personal or mixed which may be included in . . . the trust or estate."

In various codicils, Mrs. Gunter revoked some bequests, conditioned other bequests, and made additional bequests. She also gave options to purchase personal property to Robert L. Hines, Jr. On a date not shown in the record, but apparently before September 3, 1988, Mollie West Boissieux died, and Mrs. Gunter effectively revoked the provisions for her by lining out her name. On September 3, 1988, Mrs. Gunter added a codicil to her will which provided in pertinent part:

After all my bills - expenses - gifts and etc. settled -

The money that is left over I want it equally divided among the following people

Herman West
Sara Rigel
Robert Hines[, Jr.]
Twyla Willey [Gunter]

On January 5, 1991, Mrs. Gunter revoked the September 3, 1988 bequest to Herman West by dating and initialling her act of drawing a line though West's name as it appeared in the codicil.

The total appraised value of Mrs. Gunter's estate was $690,012, and was comprised of $366,822 in corporate stocks, $53,190 in tangible personal property, and her residence and lot, appraised at $270,000. The chancellor ruled that Mrs. Gunter "intended for her estate to be held in trust for the benefit of her husband until his death. Upon his death her estate was to be converted ('reduced') to cash and distributed to the remaindermen." The Wests appeal this ruling.

Established rules govern our construction of these testamentary documents.

> [T]he paramount rule in testamentary construction is that the intention of the testator controls. . . . In ascertaining that intention, a court must examine the will as a whole and give effect, so far as possible, to all its parts. Although the language in a will may be obscure and uncertain, if the testator's intention is ascertainable, his intention will prevail.

*Thomas v. Copenhaver*, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988) (citations omitted).

The Wests claim that Mrs. Gunter intended "two different dispositions of her assets, depending on whether she was or was not survived by her husband." This premise is based primarily upon the Wests' construction of the word "reduced" in Article Three B.

The Wests note that if Mr. Gunter did not survive Mrs. Gunter, "she clearly directed that all of her personal and real estate be *sold* and the net proceeds be *added and disposed* of as part of her Trust Residuary [as cash]." Under those circumstances, the Wests implicitly recognize that Clara Faye West would have received nothing from the residuary trust because the September 3, 1988 codicil effectively removed her as a legatee, and Herman West would have received nothing from the residuary estate because of Mrs. Gunter's deletion of his name from the September 3, 1988 codicil.

However, the Wests contend that if Mr. Gunter were to survive Mrs. Gunter, as he indeed did, then Mrs. Gunter's use of the word "reduced" in Article Three manifested an intent not to have her entire estate converted to cash, but merely to "reduce or diminish the Residuary Trust by first distributing $10,000 to each of the named individuals (Clause B(1)) and then the remaining cash and other personal and real estate [noncash property] would then be paid over in equal shares to the same named individuals [as set forth in Clause (B)(2)]." Thus, the Wests reason that because the residuary estate was not to be converted to cash for distribution (as it would have been had Mr. Gunter died first), only such cash as was in the residuary trust estate at the termination of Mr. Gunter's life interest could be the subject of the September 3, 1988 codicil. Accordingly,

the Wests argue that this codicil does not affect the bequest in Article Three B(2) and they continue to share in the noncash portion of the residuary estate. We do not agree.*

■ The verb "reduce" has at least 14 definitions. Webster's Third New International Dictionary 1905 (1986). Depending upon the context in which it is used, it can mean "to diminish in size, amount, extent, or number" or it can mean "to transpose from one form into another." *Id.* Although Article Three B read alone might support the Wests' interpretation of the word "reduced," when the entire will is read in context, several considerations lead us to conclude that Mrs. Gunter intended it to mean a transposition or conversion of one form of assets into another--a conversion into cash, as the trial court held.

In the first place, the Wests' construction creates a patent inconsistency between Mrs. Gunter's directions in Articles Two and Three for the liquidation of her residuary estate should she survive her husband. Article Two directs that *all* her estate be sold and disposed of as part of the trust residuary in that event, yet the Wests claim that under the same circumstances, Article Three *limits* the assets to be converted to cash.

■ Inconsistencies in testamentary documents "are not looked upon with favor and the court should undertake, wherever it is possible, to reconcile conflicting provisions, keeping in mind always this elementary rule, the testatrix's intentions control." *Whittle v. Roper*, 156 Va. 407, 413, 157 S.E. 827, 829 (1931). If the word "reduced" is construed to mean converted or "reduced" to cash, that construction harmonizes the liquidation provisions of Articles Two and Three.

Secondly, were the Wests' contention adopted, the quantum of their suggested cash and noncash residuary estates would depend upon whether the fiduciaries decided to convert the residence and personal property to cash during Mr. Gunter's life, as they were authorized to do under the provisions of Code § 64.1-57(1)(b). Under the Wests' construction, the cash from any such sales would vest in those parties named in the September 3, 1988 codicil rather than in those parties named in Article Three B(2).

■ If the fiduciaries had such a power, they could have eliminated the Article Three B(2) residuary estate simply by selling all

---

* In view of our holding, we do not reach the Wests' additional claim that the trial court also erred in failing to rule that they receive separate shares in noncash property.

the so-called noncash property. Such an action would be analogous to the exercise of a power of appointment, and we have said that "the will must reflect with certainty the donor's intent to create [such] a power." *Leach v. Hyatt*, 244 Va. 566, 569, 423 S.E.2d 165, 168 (1992). This will does not "reflect with certainty" any such intent on Mrs. Gunter's part.

Finally, we do not agree that the other testamentary provisions relied upon by the Wests are sufficient to overcome Mrs. Gunter's obvious and dominant intent to delete Herman West and Mollie West Boissieux as legatees of her Article Three B(2) residuary trust and to add Sara Rigel as a legatee with Robert L. Hines, Jr., and Twyla Willey Gunter. Accordingly, we conclude that Mrs. Gunter intended her fiduciaries to convert her residuary estate into cash for distribution upon the death of Mrs. Gunter or her husband, whichever outlived the other, and that she did not intend to divide her residuary estate into cash and noncash portions, as the Wests contend.

Because the residuary estate was to be converted to cash, we also conclude that the September 3, 1988 codicil effectively disposed of what Mrs. Gunter described as "the Remainder of my Residuary Trust," and revoked the designation of the legatees named in Article Three B(2) by naming other legatees who would take such portion. Since Mrs. Gunter revoked the provision for Herman West, those legatees are Sara Rigel, Robert Hines, Jr., and Twyla Willey Gunter.

For these reasons, we will affirm the judgment of the trial court.

*Affirmed.*