Present:  All the Justices

GEORGE                B.              LITTLE,             TRUSTEE
                                                OPINION BY
v.  Record No. 941475             CHIEF JUSTICE HARRY L. CARRICO
                                            June 9, 1995
WILLIAM S. WARD, JR., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

This appeal is from an order removing George B. Little (Little) and Robert L. Freed (Freed) as trustees of a trust because hostility developed between them.  Finding that the trial court erred in removing George B. Little, we will reverse.

Anne L. Ward (Mrs. Ward) executed the trust agreement on December 30, 1976, and funded the trust with shares of stock she owned in The Little Oil Company, Incorporated, of Richmond (Little Oil).  In creating the trust, Mrs. Ward had three purposes in mind, (1) to remove the stock from her gross estate in order to achieve substantial savings in estate taxes, (2) to provide security for her husband, William S. Ward, Sr., one of the trust's beneficiaries whose affliction with alcoholism caused serious financial problems, and (3) to provide for her children, William S. Ward, Jr., and Beverly Lewis Ward, the trust's other beneficiaries.

Article Seven of the trust agreement is central to the issues involved in the case.  It provides as follows:

This trust is irrevocable and the Grantor does hereby expressly relinquish all right, whether acting individually or in conjunction with others, to alter, amend, revoke, or terminate this Agreement, but the Grantor expressly reserves the right to add additional property acceptable to the Trustee of any nature whatsoever to the principal of this trust.

In the trust agreement, Mrs. Ward named Little, a Richmond attorney, as trustee. However, in the introductory clause of the agreement, Little's name was followed by a blank space for the naming of a co-trustee. Blank spaces were provided for the co-trustee's name in two other places in the body of the document, and there was an extra signature line and a third notarial certificate included at the end. Little explained on the witness stand that he provided the blank spaces when he prepared the document because Mrs. Ward consistently named two persons in other documents he had prepared for her.

Little testified further that although he and Mrs. Ward discussed the naming of a co-trustee on a number of occasions after she executed the agreement and he delayed executing it for three months to give her time to name a co-trustee, she finally told him he should act as sole trustee, and he signed the agreement on March 24, 1977. Mrs. Ward testified, however, that she "didn't trust [Little] to be sole trustee" and that when she left his office after she executed the trust agreement, she understood she had "the ability to fill in that blank."

Ten years later, in February 1987, Mrs. Ward telephoned Freed, a Richmond attorney who then represented both Mrs. Ward and Little Oil, of which she was president. Mrs. Ward told Freed the company was preparing to pay its annual dividend, and she instructed him to "figure out some way" to avoid sending Little the dividends on the stock in the trust, amounting to some $9,000.

Freed "got the trust agreement out and focused on the blank in the document." He also did some research and found no cases

either supporting Mrs. Ward's position or prohibiting her from appointing a co-trustee. Deciding that Mrs. Ward "had retained the right to complete the blank," Freed "advised [Mrs. Ward] of the risk of [filling in the blank,] agreed that [he] would serve as a co-trustee of the trust, . . . agreed that [he] would accept the funds from Little Oil Company," and secured Mrs. Ward's agreement to indemnify him.[1] However, neither Freed nor Mrs. Ward informed Little of Freed's purported appointment as co-trustee.

For more than three years, Freed periodically received checks from Little Oil, representing payments of dividends on the stock held in the trust. Freed deposited the checks in an account he opened as "Escrow Agent" in a local bank but neither notified Little of the existence of the account nor reported the sums received to the Internal Revenue Service or Virginia tax authorities.

Finally, on March 23, 1990, realizing he was in "a dilemma because [he] had not reported [the dividends and knew Little could not have reported them] on any trust income tax return," Freed sent bank "summaries" to the certified public accountant Little used to prepare tax returns for the trust. Little immediately wrote Freed and demanded that he turn the funds over to Little. Freed refused the demand.

Meanwhile, on December 23, 1986, Mrs. Ward and the three beneficiaries of the trust, with Freed as their counsel, filed a

_____

[1] Mrs. Ward never filled in any of the blank spaces in the trust agreement. Apparently, Freed was content with her oral appointment of him as co-trustee.

petition against Little, as trustee, alleging that, due to recent changes in federal and state tax laws, the shareholders of Little Oil had resolved that the company "should elect [Subchapter] S Corporation status pursuant to the provisions of the Internal Revenue Code on or before December 31, 1986." The petition alleged further that Little had refused to terminate the trust, to distribute the shares of the corporation to the beneficiaries, or to resign as trustee and appoint a successor trustee so the corporation could elect Subchapter S status before December 31, 1986.

The petition prayed that the court order Little to distribute to the beneficiaries the shares he held in trust, order that the trust be terminated, or order Little to resign as trustee and appoint Freed as successor trustee. Little filed a response denying that his refusal was without good cause. He also offered to resign as trustee in favor of "any corporate fiduciary in the City of Richmond," provided his successor concurred with his position that the trust should not be terminated because there were contingent beneficiaries who could not be ascertained until the occurrence of future events.[2]

The Subchapter S issue became moot for reasons unrelated to the questions involved in the present case. However, the petition

---

[2]On appeal, Little stresses the point that because there were contingent beneficiaries who could not be ascertained until the occurrence of future events, it was his duty to resist the efforts to terminate the trust. His opponents deny there is any substance to the point. In view of the disposition we make of the case _infra_, we need not decide the point.

filed by Mrs. Ward and the beneficiaries was not dismissed, and negotiations continued for several years concerning a successor to Little as trustee. Then, on July 26, 1990, after Little learned of the "Escrow Agent" account into which Freed had been depositing dividends accruing on the stock held in the trust, Little filed a cross-bill against Freed and his law firm seeking judgment "in an amount equal to the total dividends diverted . . . together with appropriate interest and an additional sum equal to the total of all penalties and interest payable to the United States Government and the Commonwealth of Virginia."[3] A consent order allowed the filing of the cross-bill.

Freed and his law firm filed an answer to the cross-bill on April 23, 1991. From this answer, Little learned for the first time of Freed's purported appointment as co-trustee. By order entered August 23, 1993, the case was continued, and Freed and his law firm were permitted to withdraw as counsel for the beneficiaries of the trust.[4]

With leave of court, the beneficiaries, with new counsel, filed an amended petition on October 12, 1993. This petition sought the removal of both Little and Freed as trustees "due to

[3]At time of trial, the funds in Freed's "Escrow Agent" account amounted to "about $29,000."

[4]About this time, an incident occurred which caused friction between Little on the one hand and Mrs. Ward and the beneficiaries on the other. In a letter dated May 18, 1993, Mrs. Ward and the beneficiaries requested that Little pay hospital bills totalling some $14,000 that had been incurred for the hospitalization of William S. Ward, Sr. Little refused the request, taking the position that Mrs. Ward was responsible for the bills of her spouse.

irreconcilable disagreements and conflict between the co-trustees."

After a hearing, in an order entered May 26, 1994, the trial court found that "because of the existence of the hostility and friction" between Little and the settlor and beneficiaries and between Little and Freed, "the best interests of the trust would be served by the removal of . . . Little and . . . Freed as trustees." The order removed Little and Freed, appointed The Tredegar Trust Company as the sole trustee, and dismissed Little's cross-bill. We awarded Little this appeal.

William S. Ward, Sr., one of the trust's beneficiaries, died in December, 1993. Freed, his law firm, and the surviving beneficiaries, William S. Ward, Jr., and Beverly Lewis Ward, have filed a joint brief and will be referred to hereinafter, collectively, as Ward.[5]

The initial question to be decided is whether Freed was validly appointed as co-trustee. In resolving this question, the crucial consideration is whether Mrs. Ward validly reserved the power to name a co-trustee.

On this point, the trial court noted in a letter opinion that "[t]he settlor, by terms of the trust instrument, may reserve to herself the power to modify or alter the trust with reference to the details of administration of the trust." In its order of May

---

[5]Anne L. Ward is not a party to this appeal, but she signed a statement at the end of the appellees' brief in opposition to the granting of an appeal that she agreed with the argument of appellees' counsel.

26, 1994, the court stated that "the terms of the trust . . . permitted . . . Anne L. Ward, to preserve the power to appoint a second trustee to the trust instrument" and that Mrs. Ward "accomplished [this] by . . . appointing Robert L. Freed as co-trustee."[6]

However, the court did not specify any term of the trust agreement that reserved the power to name a co-trustee and, indeed, the instrument contains no such term. Apparently, the court considered that Mrs. Ward's stated intent to name a co-trustee, coupled with the presence of blank spaces in the trust agreement, constituted a reservation of the power to name a co-trustee.

If this was the basis of the trial court's finding of a reservation of power, then the finding was in error for it is in contravention of Article Seven of the trust agreement. Restatement (Second) of Trusts § 331 (1959). Article Seven provides that the trust is irrevocable and prohibits any alteration or amendment of the agreement save to add additional property acceptable to the trustee.

Commenting on Article Seven, the trial court said in its letter opinion that the purpose of the Article was to prohibit "a change of purpose or object of the trust" and not to prevent the addition of a co-trustee as Mrs. Ward intended, which "did not

_____

[6]On brief, Ward adopts the trial court's rationale in arguing that Mrs. Ward reserved the power to name a co-trustee.

change the substantive provisions of the trust" but "merely relate[d] to its administration."[7]  There is nothing in the language of Article Seven, however, that permits so restrictive an application of its terms.  Rather, the language is all encompassing, prohibitive of <u>any</u> alteration or amendment of the agreement, substantive or administrative.

When Little signed the trust agreement after it had been executed by Mrs. Ward and she had funded it with the Little Oil stock, the agreement became complete, its terms became fixed as they were then spelled out, and the trust became operative.  One of the terms becoming fixed as then spelled out was that the trust would be administered by only one trustee, namely, Little, despite the fact that blank spaces remained in the trust agreement; once the trust became operative, the blank spaces became surplusage and, thereafter, should have been ignored.[8]

Another of the terms becoming fixed as then spelled out was the prohibition against any alteration or amendment of the trust agreement.  With the terms thus fixed, any filling in of blanks to name a co-trustee clearly would have been an alteration or

---

[7]Ward adopts the trial court's rationale in arguing that Mrs. Ward's appointment of a co-trustee did not violate Article Seven.

[8]Ward makes the additional argument that the presence of blanks in the trust agreement "where one would expect a named trustee" rendered the instrument ambiguous and, hence, the trial court properly determined that Mrs. Ward intended that the trust be administered jointly by two trustees.  We will agree that Mrs. Ward had the described intent, but the fact she had such an intent is beside the point.  The question is whether Mrs. Ward acted pursuant to a power reserved in the trust agreement to carry out her intent.  And, as indicated in the text, <u>infra</u>, she did not act pursuant to any such power.

amendment of the trust instrument in violation of Article Seven. See Restatement (Second) of Trusts § 331 cmt. b (1959).

In our opinion, Mrs. Ward did not validly reserve the power to appoint a co-trustee and, hence, Freed was not validly appointed.[9] It follows that, while friction between co-trustees may be a valid ground for removal, May v. May, 167 U.S. 310, 320-21 (1897), Freed never became a co-trustee, and, consequently, any hostility or friction that developed between him and Little could not constitute good cause for the removal of Little.

Nor could the friction that existed between Little and Mrs. Ward and the beneficiaries serve as good cause for removing Little. In the first place, the sole basis alleged in the beneficiaries' amended petition for removal of Little was the "irreconcilable disagreements and conflict between the co-trustees"; therefore, friction between Little and Mrs. Ward and the beneficiaries was not available to the trial court as a ground for removing Little. Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981) (no court can base its judgment upon facts not alleged or upon a right not pleaded). Furthermore, in Virginia, "[f]riction between the trustee and the beneficiary is not in itself sufficient ground for removal [of the trustee]." Willson v. Kable, 177 Va. 668, 676, 15

_____

[9]Little has been concerned throughout this case that if Mrs. Ward is held to have reserved the power to name a co-trustee, there is danger that the assets of the trust would be included in her gross estate with an accompanying increase in estate taxes in excess of $300,000. Ward says there is no basis for Little's concern. Because we hold that the trial court erred in finding a reservation of power, this issue is moot.

S.E.2d 56, 59 (1941).

Accordingly, we will affirm the judgment of the trial court to the extent that it removed Freed as trustee but reverse it to the extent that it removed Little as trustee and named a new trustee in his place. We will dismiss with prejudice the amended petition insofar as it sought removal of Little as trustee and enter final judgment in favor of Little. We will reverse the dismissal of Little's cross-bill, reinstate the cross-bill, and remand the case for further proceedings consistent with the views expressed in this opinion.

<u>Affirmed in part,
reversed in part,
and remanded.</u>