Present: All the Justices

DAN L. FRAZER

v. Record No. 952115     OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 13, 1996
AUSTIN LINWOOD MILLINGTON,
ETC., ET AL.

                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Michael P. McWeeny, Judge

     This appeal involves issues relating to the exercise of a special testamentary power of appointment contained in a trust agreement and to a management/co-ownership agreement executed between beneficiaries of the trust.

     Mildred W. Frazer executed a will and a Trust Agreement in 1984 which provided that all her property be placed into the Mildred W. Frazer Trust (the Trust) at her death. The Trust was a discretionary trust to be administered for the benefit of her two children, Dan L. Frazer and Shelle Frazer Millington. The relevant division date of the Trust was July 1, 1995.

     Following Mildred Frazer's death in 1986, disputes arose between the trust beneficiaries and the trustees. The resulting litigation was settled in 1992. As part of the settlement, the trustees agreed to name Shelle as trustee with Dan as the successor trustee in the event Shelle could not serve. Additionally, Dan and Shelle executed a Management/co-ownership Agreement which contained provisions regarding the division and distribution of the Trust assets and authorized Shelle to run the businesses which comprised the primary assets of the Trust.

     Shelle died unexpectedly in 1994, leaving no children. In her will she named her husband, Austin Linwood Millington, as the

executor and sole beneficiary of her estate.  Shelle's will also referred to a special testamentary power of appointment contained in Article V, Paragraph 3 of the Trust Agreement, and directed that "all property subject thereto shall pass to my husband."

Following Shelle's death, Dan, acting as successor trustee, transferred some assets of the Trust to himself and directed that trust distributions be made only to him.

Millington, individually and as executor of Shelle's estate, filed a bill of complaint seeking, <u>inter alia</u>, a declaratory judgment that either (1) he, individually, was a beneficiary of the Trust through Shelle's exercise of the special testamentary power of appointment in his favor, or (2) Shelle's estate was a beneficiary of the Trust because it succeeded to her contract rights in the Management/co-ownership Agreement.  Millington also sought the appointment of an independent trustee.

Following a four-day hearing, the trial court ruled that provisions of both the Trust Agreement and Management/co-ownership Agreement were ambiguous and, based on extrinsic evidence, concluded that Shelle's exercise of the special testamentary power of appointment was ineffective to pass any interest in the Trust to Millington.  The trial court further held that the Management/co-ownership Agreement was a valid contract and that, under Paragraph 20 of the Agreement, Shelle's estate succeeded to her contract right to require distribution of the trust assets in accordance with the terms of the Agreement. The trial court appointed an independent trustee based on its determination that neither the Management/co-ownership Agreement

nor the 1992 settlement agreement constituted a valid appointment of Dan as a successor trustee to Shelle.  Finally, the trial court ruled that the Trust was liable for the attorneys' fees and costs related to litigation filed by Dan which Shelle defended in her capacity as trustee of the Trust.

Dan appealed, challenging the trial court's holding that Shelle's estate could enforce contract rights under the Management/co-ownership Agreement, the appointment of an independent trustee, and the payment of attorneys' fees and costs by the Trust.  Millington assigned cross-error, asserting that the terms of the Trust Agreement were not ambiguous and that Shelle had effectively exercised the special testamentary power of appointment granted in Article V, Paragraph 3 of the Trust Agreement.  We awarded an appeal on all issues.

We begin, as the trial court did, by considering the provisions of the Trust Agreement applicable to the special testamentary power of appointment which Shelle attempted to exercise in favor of Millington.  The relevant provisions of the Trust Agreement state in pertinent part:

> 2.   . . .
>
> On the Division Date, the Trustee shall divide the Trust Estate into separate shares, one share for each of her children who is living on the Division Date and one for each of her deceased children who leaves a descendant living on the Division Date.
>
> . . . .
>
> 3.   Each child who survives the Grantor shall have a special testamentary power to appoint all or any part of the undistributed income and principal of his share (when determined as of the Division Date) to any person, firm or institution other than his estate, his creditors or the creditors of his estate . . .;

provided that he specifically refer in his will to this special power of appointment and his intent to exercise it. Should a child not fully exercise his special power of appointment, then the unappointed portion of his share remaining at his death shall pass free of trust per stirpes to his descendants who survive him. If no descendant survives him, then the unappointed portion of his share shall pass per stirpes, to the Grantor's descendants who survive that child.

Dan asserts that the trial court correctly found that these two paragraphs were ambiguous and that, based on the parol evidence introduced, Mildred Frazer intended that Shelle or her descendant had to survive the distribution date of the Trust to obtain an interest in the trust. Because Shelle died before the division date and without a descendant, she had no interest in the Trust and therefore had no interest to transfer to Millington under the special testamentary power of appointment granted in Paragraph 3. We conclude that this construction of the Trust Agreement is incorrect.

In construing the terms of the Trust Agreement, we seek to effectuate the intent of the grantor. In ascertaining that intention, we must examine the document as a whole and give effect, so far as possible, to all its parts. Thomas v. Copenhaver, 235 Va. 124, 128, 365 S.E.2d 760, 763 (1988). A cardinal rule of will construction is that if "the words and language of the testator are clear, the will needs no interpretation. It speaks for itself." McKinsey v. Cullingsworth, 175 Va. 411, 414, 9 S.E.2d 315, 316 (1940). Applying these principles, we conclude that the provisions of the paragraphs in issue are not ambiguous. They reflect the grantor's intent to create a special testamentary power of

appointment over a beneficiary's interest in the Trust and do not condition effective exercise of that power on the beneficiary or a descendant of the beneficiary surviving the distribution date of the Trust.

The first sentence of Paragraph 3 can only be construed as expressing the grantor's intent to provide for the exercise of a special testamentary power of appointment. A power of appointment is "a unique legal creature" which "concerns property but is not, itself, 'an absolute right of property.'" Holzbach v. United Va. Bank, 216 Va. 482, 484, 219 S.E.2d 868, 870 (1975)(quoting Davis v. Kendall, 130 Va. 175, 197, 107 S.E. 751, 758 (1921)). It is the power to dispose of property vested in another. Davis, 130 Va. at 204, 107 S.E. at 760. The exercise of the power does not transfer property from the donee to the appointee, in this case from Shelle to Millington, but rather from the donor to the appointee. The donee, Shelle, is only a conduit. Holzbach, 216 Va. at 484, 219 S.E.2d at 871; Commonwealth v. Carter, 198 Va. 141, 145, 92 S.E.2d 369, 372 (1956). Thus, the donee must be able to exercise the power prior to the time the property vests in the donee. To condition a power of appointment on the vesting of the fee simple interest in the donee/beneficiary directly contradicts the reason for and principles underlying a power of appointment.

The grantor, Mildred Frazier, described the power of appointment contained in Paragraph 3 as a testamentary power. Thus it may only be exercised if the donee dies before the division date. If the donee survived the division date, the

donee would take absolute ownership of the subject of the special power of appointment, and the special power would merge with the fee simple.  See Browning v. Bluegrass Hardware Co., 153 Va. 20, 29, 149 S.E. 497, 499-500 (1929).

Lastly, the construction urged by Dan creates a direct conflict with the final sentence of Paragraph 3, as quoted above. That sentence specifically addresses a situation in which a special testamentary power is partially exercised and no descendants survive the donee at the division date.  If Dan's assertion that the donee or his descendant must survive the division date to effectively exercise the special power was correct, there would be no need for the Trust Agreement to address a circumstance in which no descendants survived the donee at the division date.  "Inconsistencies in testamentary documents 'are not looked upon with favor and the court should undertake, wherever it is possible, to reconcile conflicting provisions, keeping in mind always this elementary rule, the testatrix's intentions control.'"  West v. Hines, 245 Va. 379, 384, 429 S.E.2d 1, 3 (1993)(quoting Whittle v. Roper, 156 Va. 407, 413, 157 S.E. 827, 829 (1931)).

Giving expression to all the provisions, we hold that Mildred Frazer's intent is ascertainable and unambiguous.  A plain reading shows that Mildred Frazer intended to allow her children to exercise a special testamentary power of appointment without requiring that they or one of their descendants survive the division date.  Accordingly, we now consider whether Shelle effectively exercised that power in her will.

A donor may impose conditions and requirements upon the exercise of a power of appointment, and the valid exercise of that power is dependent upon compliance with those conditions and requirements. Holzbach, 216 Va. at 484, 219 S.E.2d at 871. Under the provisions of Article V, Paragraph 3 of the Trust Agreement, valid exercise of the special power requires that: 1) the donee survive the donor; 2) the donee not appoint himself, his creditors, his estate, or creditors of his estate; and, 3) the donee specifically reference the special power in his or her will. There is no contention that these conditions were not met and we find that they were satisfied. We, therefore, hold that Shelle Millington validly exercised her special power of appointment in favor of Austin Millington.

In light of our holding regarding the exercise of the special power of appointment, we need not address Dan's assignment of error concerning whether Shelle's estate was a beneficiary of the trust as a successor in interest to her contract rights in the Management/co-ownership Agreement. In considering the two remaining assignments of error, we first conclude that the trial court was correct in holding that Dan was not appointed trustee of the Trust in accordance with the provisions of the Trust Agreement.

Appointment of trustees must conform precisely to the requirements of the trust document. Little v. Ward, 250 Va. 3, 9-10, 458 S.E.2d 586, 590 (1995). Article VIII, Paragraph 4 of the Agreement provides that only an individual serving as a trustee may appoint his or her successor trustee. While both the

Management/co-ownership Agreement and 1992 settlement provide that Dan would automatically become successor trustee to Shelle if Shelle could not serve, these documents could not constitute a valid appointment of Dan. The trustees signing the 1992 settlement could only appoint their own successor, not a subsequent successor trustee. Shelle was not appointed trustee until after she executed the agreements. Thus neither document constitutes a valid appointment by Shelle of Dan as her successor trustee. Accordingly, the trial court properly appointed an independent trustee to settle the affairs of the Trust. Furthermore, the orders of the trial court giving direction to the independent trustee and directing Dan to account for and return certain assets to the Trust were proper.

Finally, we reject Dan's contention that the trial court erred in determining that litigation filed by Dan naming Shelle "individually" as the defendant was in fact litigation related directly to Shelle's activities as trustee of the Trust. The record supports the trial court's conclusion that the attorneys' fees incurred in the defense of that litigation were properly payable by the Trust.

In summary, we will reverse that portion of the trial court's judgment holding that Shelle Millington's attempt to exercise the special testamentary power of appointment granted in Article V, Paragraph 3 of the Trust Agreement in favor of Austin Millington was ineffective and will enter judgment for Austin Millington on that issue. We will affirm that portion of the judgment of the trial court regarding the appointment of and

direction to an independent trustee and directing the Trust to pay certain attorneys' fees and costs.

                                        Affirmed in part,
                                        reversed in part,
                                        and final judgment.